Argued September 10, affirmed December 22, 1971, petition
for rehearing denied February 23, 1972

STATE HIGHWAY COMMISSION ET AL,
*Respondents, v.* FULTZ ET AL, *Appellants,*
CONSOLIDATED WITH
L-E-W ENGINEERING, INC., *Appellant, v.*
COOPER, *Respondent & Cross-Appellant,* and
STATE HIGHWAY COMMISSION, *Intervenor-
Respondent & Cross-Appellant.*
491 P2d 1171

*George P. Winslow,* Tillamook, argued the cause for appellants. With him on the briefs was C. Ray Johnson, Tillamook.

*Frank C. McKinney,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General; Jacob B. Tanzer, Solicitor General; L. I. Lindas, Assistant Attorney General, Salem.

HOWELL, J.

These two cases, consolidated for trial in the circuit court and on appeal to this court, are consolidated also in this opinion.

The first case—*State of Oregon, by and through its State Highway Commission et al v. Fultz and L-E-W Engineering, Inc.*—is a suit for an injunction. Plaintiff seeks to restrain defendants from continuing the construction of a road and revetment on the ocean beach at South Neskowin without a permit from the state highway engineer, as required by Oregon Laws 1967, ch 601, § 6. The beach area involved is commonly called the dry sand area, or the area between ordinary high tide and the vegetation line, or the elevation line of 16 feet, following topographic contour lines.

The defendants' answer challenged the constitutionality of Chapter 601 and requested the court to quiet title to the defendants' land including the beach area.①

---

① Chapter 601, Oregon Laws 1967, is now codified as ORS 390.610 through ORS 390.690. The term "ocean shore" is defined under ORS 390.605 as the land lying between extreme low tide of the Pacific Ocean and the line of vegetation. ORS 390.610 states that the public rights in the ocean shore are vested in the State of

The plaintiff's reply alleged that the public had, by long years of open, notorious and uninterrupted use, acquired a recreational easement in the beach area.

The second case—*L-E-W Engineering, Inc., petitioner, v. Forrest Cooper, State Highway Engineer*—was an appeal to the circuit court from the highway engineer's denial of petitioner's application to complete construction of the beach access road and revetment. The appeal was made pursuant to ORS 390.658, which allows appeals to the circuit court from orders of the state highway engineer denying applications for permits to construct improvements on the beach area. The petition also requested the court to declare Chapter 601 unconstitutional and to quiet petitioner's title in the beach area. As the petitioner sought ownership of the beach land, the State Highway Commission was allowed to intervene to protect any rights of the public in the beach.

■ The trial court found that the public had used the beach between ordinary high tide and the vegetation line for recreational purposes since 1889 and, as a result, had acquired by implied dedication or prescription an easement for recreational purposes. Based on this finding, the trial court held that the state highway engineer was entitled to regulate any construction in this area. The court also sustained the action of the state highway engineer in denying petitioner's application to continue construction of the road and revetment.

---

Oregon to be held and administered as state recreation areas. ORS 390.640 states that it is necessary to protect the state recreation areas, preserve the natural beauty of the ocean shore, etc., and to control and regulate improvements placed thereon. ORS 390.650 delineates the procedure necessary to secure a permit to construct improvements on the ocean shore.

Subsequent to the trial in the circuit court in the case at bar, this court decided the same identical issue—the rights of the public in the beach land between ordinary high tide and the vegetation line—in *State ex rel Thornton v. Hay,* 254 Or 584, 462 P2d 671 (1969). The court discussed the rights of the public based on the theories of prescription and implied dedication, but concluded that "the better legal basis" supporting the rights of the public to an easement for recreational use was the English doctrine of custom. Applying that doctrine, the court held that "oceanfront lands from the northern to the southern border of the state ought to be treated uniformly." We also held that the dry sand area along the Pacific shore "has been used by the public as public recreational land according to an unbroken custom running back in time as long as the land has been inhabited," and that the public had acquired an easement for recreational purposes. The decision in *Thornton* is dispositive of that issue in this case.[2]

■ We also agree with the trial court that the state highway engineer acted properly in denying the petitioner's application to complete construction of the road and revetment on the beach between ordinary high tide and the vegetation line. We approve and

---

[2] The court in *Thornton* also disposed of the constitutional issue:

"Because we hold that the trial court correctly found in favor of the state on the rights of the public in the dry-sand area, it follows that the state has an equitable right to protect the public in the enjoyment of those rights by causing the removal of fences and other obstacles.

"It is not necessary, therefore, to consider whether ORS 390.640 would be constitutional if it were to be applied as a zoning regulation to lands upon which the public had not acquired an easement for recreational use." 254 Or at 587-88.

adopt the reasons given by the trial court in affirming the action of the engineer:

"Having found that Chapter 601 is a valid law, the question remains as to whether or not application for a permit should have been granted. In this respect the evidence establishes that the road in addition to physically occupying or enclosing some 1.1 acres of the beach, thus denying public use of that area for recreational purposes, is, in fact, an unsightly blemish upon an otherwise natural area of considerable scenic beauty. The road and revetment, I believe, also will constitute a considerable hazard to the public at periods of extreme high tide in that a person attempting to escape from a wave would be confronted with climbing the rock revetment, or with running five hundred feet or more around the end of the revetment. For all except the agile this may be an impossible feat. There is also evidence from a qualified oceanographer that the revetment presenting a lateral face to the incoming seas would at times of high tides and storms set up an alongshore current with consequent lateral displacement of sand of unpredictable result. In simplest terms, the revetment would introduce an erosion factor to the beach not now present, the effect of which cannot be predicted with any certainty. Additionally, it appears to the Court both from observation of the road and from the evidence that this road and planned revetment, exposed as it is to the action of winter storms including the direct action of the sea, would be difficult of maintenance. Whatever the good intent of the defendants at the present time, there is no assurance that this proposed structure with its appurtenances will not one day be reduced to rubble by the action of the storms, creating further problems for both the public and the State, if not the owner."

Affirmed.