**William G. HAY and Georgianna F. Hay, Plaintiffs,**

v.

**Thaddeus B. BRUNO et al., Defendants.**

**Civ. No. 68–300.**

United States District Court, D. Oregon.

June 6, 1972.

Clifford B. Alterman, Kell & Alterman, Portland, Or., Rives, Bonyhadi, Hall & Epstein, Gerard K. Drummond and William C. Scott, Jr., Portland, Or., for plaintiffs.

Lee Johnson, Atty. Gen., George E. Rohde, Peter S. Herman, Frank C. McKinney, Philip J. Engelgau, Asst. Attys. Gen., Salem, Or., for defendants.

OPINION

Before CARTER and KILKENNY, Circuit Judges, and SOLOMON, District Judge.

SOLOMON, District Judge:

Plaintiffs challenge the constitutionality of Chapter 601, Oregon Laws 1969, codified as Oregon Revised Statutes (ORS) § 390.610 through § 390.690. They assert that the enforcements of these statutes, as interpreted by the Supreme Court of Oregon in State ex rel. Thornton v. Hay, 254 Or. 584, 462 P.2d 671 (1969), and as applied to them, would take their property without compensation in violation of their federally protected constitutional rights.

In this action before a three-judge court, convened pursuant to 28 U.S.C. §§ 2281 and 2284, plaintiffs seek to enjoin the enforcement of the statute. Both sides seek summary judgment.

Section 390.610(1), of the 1967 statute recites that the legislation seeks "to forever preserve and maintain the sovereignty of the state heretofore legally existing over the ocean shore of the state from the Columbia River on the north to the Oregon-California line on the south so that the public may have the free and uninterrupted use thereof."

To achieve this goal, ORS § 390.610(2) declares:

"The Legislative Assembly recognizes that over the years the public has made frequent and uninterrupted use of the ocean shore and recognizes, further, that where such use has been legally sufficient to create rights or easements in the public through dedication, prescription, grant or otherwise, that it is in the public interest to protect and preserve such public

rights or easements as a permanent part of Oregon's recreational resources."

ORS § 390.610(3) states:

"Accordingly, the Legislative Assembly hereby declares that all public rights or easements legally acquired in those lands described in subsection (2) of this section are confirmed and declared vested exclusively in the State of Oregon and shall be held and administered as state recreation areas."

To protect and administer the easements, the Legislature enacted ORS § 390.640. It prohibits the building of any structure on the land between the extreme low tide line and the 16-foot elevation line (this area will be called "the beach") unless a permit is issued for the structure.

Plaintiffs own a beachfront motel at Cannon Beach, Oregon. Their property includes land between the line of mean high tide and the visible line of vegetation, which is practically the same as the 16-foot line mentioned in the statute. This is the area in dispute and will be called "the dry sand area".

Plaintiffs' chain of title runs without exception or reservation from an 1893 federal patent. At least since 1892, the general public without requesting or obtaining permission from the adjacent property owners openly and continuously used for vehicular traffic and recreational purposes [1] all of the beach at Cannon Beach, including the dry sand area to which plaintiffs have record title.

Since 1892, the State of Oregon exercised authority over Cannon Beach by regulating the speed and use of vehicles, prohibiting the building of fires, the discharging of firearms and the dumping of rubbish and litter. The State has been spending public funds to police the area, and local groups have been providing lifeguard services on the beach.

In 1946, plaintiffs' predecessor in title dedicated an 8-foot passageway over the land so that the public would have access over plaintiffs' land to the beach. This passageway was used until 1965, when the City of Cannon Beach voluntarily vacated it.

The public generally assumed that the State owned in fee all of the land below the high water mark. This included the entire beach area, whose highest and best use was for recreational purposes.

When plaintiffs purchased the land, they knew of the long and extensive public recreational use of the entire beach at Cannon Beach.

In 1935, the United States Supreme Court in Borax Consolidated, Ltd. v. Los Angeles, 296 U.S. 10, 56 S.Ct. 23, 80 L. Ed. 9 (1935), held that the boundary of the state's fee ownership was the mean high tide line, which is neither the spring (highest) tide nor the neap (lowest high tide) but the mean of all the high tides determined over an 18.6 year period.

Both the property owners and the State recognize that their ownership rights are governed by this case. The State has primary rights to the wet sand area, which is the area seaward of the mean high tide line of the Pacific Ocean. This line is not a fixed or permanent one; it is subject to daily movement and semi-annually may shift easterly or westerly 200 feet or more. The other portion of the beach, that is, the dry sand area, belongs to the property owners, subject, however, to any rights which the public may have acquired.

In May, 1967, shortly before the effective date of ORS 390.610 to 390.690, plaintiffs, to exclude the public from using the dry sand area in front of their motel, constructed a fence.

In December, 1967, a storm washed away the fence. Two months later, plaintiffs, without applying for a permit, constructed a new fence enclosing the same portion of the beach.

In March, 1968, the State Highway Commission directed the plaintiffs to re-

---

1. Among others: walking, sunbathing, digging, picnicking, fishing and horseback riding.

move the fence. The letter stated that the beach was subject to a public easement and zoning restrictions under ORS §§ 390.610 and 390.640. Plaintiffs refused to remove the fence, and they filed this action for a three-judge court. Plaintiffs asked the Court to declare these statutes unconstitutional as applied to them and they also sought to enjoin the State from proceeding against them under these laws.

This Court stayed the proceedings to permit the State of Oregon to file an action in the State Court to determine the issues of Oregon property law. The State filed the action in the Circuit Court of Clatsop County, which Court held that the public had by prescription acquired a permanent easement for recreational purposes in this beach land.

On December 19, 1969, the Supreme Court of Oregon unanimously affirmed. State ex rel. Thornton v. Hay, *supra*. The Supreme Court opinion was by the then Justice Alfred T. Goodwin (now a Judge of the United States Court of Appeals for the Ninth Circuit), who stated that several Oregon decisions supported the trial court's decision "that the public can acquire easements in private land by long-continued user that is inconsistent with the owner's exclusive possession and enjoyment of his land." (254 Or. p. 592, 462 P.2d p. 675). The Court pointed out that both the courts and the legislative assembly in Oregon have recognized that the public can acquire prescriptive easements on private lands, at least for roads and highways. Although in Oregon there is a statutory 10-year prescriptive period, the Court said that there was continuous public use under a claim of right of the disputed land without the consent of the owners for more than 60 years.

The Supreme Court of Oregon was concerned that a decision based upon prescription might apply only to the specific tract before a court and that doubtful prescriptive cases would fill the courts of Oregon for years with tract-by-tract litigation. The Court did not affirm on the basis of prescription because it believed "that there is a better legal basis for affirming the decree. The most cogent basis for the decision in this case is the English doctrine of custom." (P. 595, 462 P.2d p. 676). The Court adopted the definition of custom from Bouvier's Law Dictionary, which reads, "such a usage as by common consent and uniform practice has become the law of the place, or of the subject matter to which it relates."

Having pointed out that the landowners in Oregon probably did not know that they had any rights in the land until recently, the Court concluded its opinion with the statement, "The rule in this case, based upon custom, is salutary in confirming a public right, and at the same time it takes from no man anything which he has had a legitimate reason to regard as exclusively his." (P. 599, 462 P.2d p. 678).

Plaintiffs in this Court assert that the Supreme Court of Oregon erroneously applied common law principles of real property when it held that the State had acquired a recreational easement in the dry sand area of plaintiffs' property under the doctrine of custom. They also assert that by reason of this error the Court created an unpredictable change in the State's property law and that this holding, coupled with ORS 390.610(3), which vests this public easement in the State, effects a taking of plaintiffs' property in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Plaintiffs recognize that real property law under the Constitution is left to the individual states to develop and administer and that the state is free to make changes, but plaintiffs say that the following excerpt from the concurring opinion of Mr. Justice Stewart in Hughes v. Washington, 389 U.S. 290, 88 S.Ct. 438, 19 L.Ed.2d 530 (1967), requires this Court not only to scrutinize this action of the State Court, but also to nullify it.

"To the extent that the decision of the Supreme Court of Washington on that issue arguably conforms to reasonable expectations, we must of course accept it as conclusive. But to the extent that it constitutes a sudden change in state law, unpredicatable in terms of the relevant precedents, no such deference would be appropriate. For a State cannot be permitted to defeat the constitutional prohibition against taking property without due process of law by the simple device of asserting retroactively that the property it has taken never existed at all. Whether the decision here worked an unpredictable change in state law thus inevitably presents a federal question for the determination of this Court." (pp. 296–297, 88 S.Ct. p. 442).

In *Hughes,* the majority of the Court held that federal rather than state law governed the ownership of accretions to adjoining land conveyed by the United States prior to statehood. The Court reversed a State Court decision which held that the State and not the adjoining owner was entitled to the accretion.

Mr. Justice Stewart in his concurring opinion observed that the Washington Supreme Court had previously held that these accretions belonged to the upland owner and that property which the upland owner "had every reason to regard as hers was declared by the state court to be in the public domain." (pp. 297–298, 88 S.Ct. p. 443). It was in this context that Mr. Justice Stewart said that the state court ruling "constitutes a sudden change in state law, unpredictable in terms of the relevant precedents."

Here, there was no sudden change in either the law or the policy of the State of Oregon. For at least 80 years, the State as a matter of right claimed an interest in the disputed land. And this land was extensively used by the public not only for vehicular traffic, but also for many recreational purposes. Plaintiffs when they purchased this beach-front property knew of this use, and the public generally thought that the State owned the disputed area in fee.

The State trial court held that the State of Oregon had acquired a recreational easement over plaintiffs' land on the theory of implied dedication. This is the same basis upon which the courts in other states have confirmed the rights of the public for travel and recreation in beach front property. Seaway Co. v. Attorney General, 375 S.W.2d 923 (Tex.Civ.App.1964); Gion v. City of Santa Cruz, 2 Cal.3d 29, 84 Cal.Rptr. 162, 465 P.2d 50 (1970).

The Supreme Court of Oregon recognized that the State could create "prescriptive easements in beach land for public recreational use", but the Court preferred to base its decision on the English doctrine of custom.

Plaintiffs' principal complaint appears to be that the legal reasoning upon which the Oregon Supreme Court affirmed the trial court is erroneous and was not reasonably predictable. On a claim of federal right, this Court is not bound by the reasoning of the State Court even when the Court is construing its own statute. Bogue v. Faircloth, 316 F.Supp. 486 (S.D.Fla.1970), appeal dismissed, 441 F.2d 623 (5 Cir.). The decision of a state court on a question of law, even though wrong and contrary to previous decisions, does not constitute a violation of the Fourteenth Amendment merely because it is wrong or because it reverses earlier decisions. Patterson v. Colorado, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879 (1907).

There was no unpredictable result here. The action of the Supreme Court of Oregon was consistent with and is supported by a number of decisions from other jurisdictions which confirm the right of a state under similar circumstances to protect and preserve its beaches for the benefit of the people. *See,* Marks v. Whitney, 6 Cal.3d 251, 98 Cal.Rptr. 790, 491 P.2d 374 (1971).

The Supreme Court of Oregon was correct in finding that Chapter 601, Oregon Laws 1969, is constitutional and did not violate any rights of the plaintiffs here.

Plaintiffs' action is dismissed.