Argued December 20, 1973, affirmed January 21, reconsideration
denied February 27, petition for review denied March 26, 1974

## STATE HIGHWAY COMMISSION, *Appellant, v.*
## BAUMAN ET AL (No. 28831), *Respondents.*

517 P2d 1202

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for appellant. On the brief were Lee Johnson, Attorney General, and John W. Osburn, former Solicitor General, Salem.

*James H. Clarke,* Portland, argued the cause for respondents W. C. Bauman, Robert G. Bauman, W. C. Bauman Co., Inc., and Howard S. Wright Construction Co. With him on the brief were Dezendorf, Spears, Lubersky & Campbell, and George L. Kirklin, Portland, and Vawter Parker, Hood River.

*C. E. Wheelock,* Portland, argued the cause and filed the brief for respondent Franklin Service Corporation.

No appearance by respondent Paula Munson Penney.

Before LANGTRY, Presiding Judge, and FORT and TANZER, Judges.

LANGTRY, P. J.

Plaintiff appeals from a decision in favor of defendants in this declaratory judgment suit in which the plaintiff seeks to establish alleged public recreational rights in a privately owned sand dune area eastward of the ocean beach and above the vegetation line in the City of Cannon Beach, Clatsop County. The complaint also seeks an injunction against the defendants' proceeding with the development of a proposed condominium project on the property. This suit, sounding in equity, is a sequel to *State ex rel Johnson v. Bau-*

*man,* 7 Or App 489, 492 P2d 284 (1971), wherein we held that a suit of this nature on behalf of the public must be brought by the State Highway Commission rather than by the Attorney General. The subject real property described in the complaint consists of a total of what appears to be, from the exhibits in the case, about a four-block area of contiguous land, which was platted of record in 1890. We adopt the trial court's following statement of the case:

"* * * The property is located northerly and easterly of the point where Elk Creek empties into the Pacific Ocean in Clatsop County. The entire property also abuts and lies immediately eastward and upward of the vegetation line or coordinate line established by and described in ORS 390.605 et seq.

"Defendant Paula Munson Penney is the fee title owner of the real property involved. She purchased the property in separate parcels, mostly from Clatsop County, which had previously obtained title through tax foreclosure. She has owned the property for approximately 14 years.

"The other named defendants, excepting Franklin Service Corporation which is a financier of the project, are the prospective developers of the condominium. The proposed condominium will occupy the entire property in question with the exception of three routes of access through and across the property which will be dedicated to and provided by the developers for the use and benefit of the general public in reaching the beach or dry sand area lying seaward of the so-called 16-foot or vegetation line.

"The property is generally a sand dune. When first acquired by defendant Penney, the dune rose to a higher elevation. In conjunction with a previous planned development on her part, Mrs. Penney caused the dune area to be cut down to approximately one-half its former elevation, to be terraced, and to be planted with beach grass for

stability. Thereafter, in order to prevent public usage of her property, defendant Penney continually posted the area with no trespassing signs, erected fences and attempted to prevent vehicular traffic by placing of chains and logs on roads and the beach perimeter. She also caused the area to be regularly patrolled by sheriff's deputies and the Cannon Beach police.

"More recently, defendant Penney has contracted with the other defendants for the development of the said condominium project. Plans were prepared for this development and were submitted to various public agencies for their approval or disapproval. The plaintiff Highway Commission reviewed these plans and disclaimed any interest at that time in the real property in question or the development. The City of Cannon Beach Planning Commission and City Council reviewed them and approved same and eventually defendant obtained therefrom a conditional-use permit and a building permit allowing them to proceed. Also, the Oregon State Parks and Recreation Land Acquisition Department conferred with defendants concerning plans for that department's acquisition and development of a parking lot and beach access route for general public use easterly and adjoining the condominium project. It was in conjunction with these plans that defendants established the proposed public beach access routes across the condominium project. It should also be noted that defendants have paid all real property taxes and assessments on the property.

"It is the contention of the plaintiff that since the early 1900's, the general public has used the sand dune area in question for various recreational purposes without limitation, under claim of right, continuously, openly, visibly, adversely, and notoriously. That this public use has been without restraint, without seeking or obtaining permission to use the same from any person or persons whomsoever and allegedly with full knowledge and acquiescence of

the owners of the property and their predecessors in title. It is plaintiff's further position that as a result of the alleged usages, public recreational easement rights have been acquired and fixed * * * [through] the common law doctrines of prescription or adverse user, grant, express or implied dedication, or custom.

"Defendants deny that the general public has gained any recreational easement rights, and that the proof failed to establish plaintiff[']s contentions * * *."

We affirm the trial court and in doing so find it unnecessary to set forth in this opinion some of the plaintiff's contentions which are without merit or to consider some of the defendants' contentions which may have merit. The contentions which we find determinative of the case relate to the plaintiff's asserted claims that the public has acquired recreational rights to the land through either (1) prescription or adverse user; (2) express or implied dedication; or (3) custom.

(1). Prescription or adverse user.

Plaintiff produced about 15 witnesses, the gist of whose testimony was to the effect that from somewhere around 1900 they and other people whom they had observed had from time to time used the sand dune area for various recreational activities. Some testified to such use in earlier, and some in later, years. Most of them testified that the public crossed the subject land going to and from the beach.

The defendants produced about an equal number of witnesses whose testimony indicated a substantially less amount of public use of the land than plaintiff's witnesses had described. Further, defendants' witnesses testified that, since Mrs. Penney's acquisition

of the property, positive steps had been taken by the owners to prevent the public from using or crossing the property. Barriers and a fence were placed around it, "No Trespassing" signs were frequently posted upon it and police were called to and did eject trespassers. There has never been a public improvement on, or even evidence of, governmental interest in the public's use of the land, which is usual in situations where dedications have been found in favor of public recreational uses. *Cf. Gion v. City of Santa Cruz,* 2 Cal 3d 29, 84 Cal Rptr 162, 465 P2d 50 (1970).

■ The most recent Oregon case concerning both dedication of property for public use and the acquisition of public rights by prescription is *Muzzy v. Wilson,* 259 Or 512, 487 P2d 875 (1971). In that case the court said:

"* * * In adverse possession cases we have required that the proof be 'clear and positive.' See *Scott v. Elliott,* 253 Or 168, 178, 451 P2d 474 (1969) and cases there cited. Testimony that defendant and her husband drove over the land 'many times' is too vague and general to support a holding that they thereby acquired a permanent right of way." 259 Or at 523.

We have reviewed the evidence de novo and agree with the trial court that the evidence of the plaintiff's witnesses in the case at bar was vague. It was like that (which fell short as necessary proof) quoted in *Muzzy,* above. In most respects the testimony was less than clear and positive. If plaintiff's evidence supports any right acquired by prescription, it would be that people have more or less continually gone across the subject property to and from the public beach. We think even that finding is unnecessary to a conclusion of this case, for the proposed development which has been approved

by the appropriate authorities provides for adequate formally dedicated access routes to the beach area. The plaintiff cannot prevail in this regard.

(2). Express or implied dedication.

■ There is no evidence of express dedication for the contended use, hence, if it is to be established it must be through implication. The discussion of implied dedication to public use in *Muzzy v. Wilson*, supra, is instructive. *See* 259 Or at 518-20. Hence, as in *Muzzy*:

> "* * * There is no evidence of express dedication * * *. In order to prevail on a theory of implied dedication defendant must prove that the owner intended 'to devote his property to a *public* use, *and this intention must be clearly and unequivocally manifested by his acts.*' [Harris v. St. Helens, 72 Or 377, 388, 143 P 941, 16D Ann Cas 1073 (1914)]. We have recently reaffirmed this formulation of the burden of proof. *Miller v. Roy W. Heinrich & Co.*, 257 Or 155, 476 P2d 183 (1970). In *Security and Investment Co. v. Oregon City*, 161 Or 421, 433, 90 P2d 467 (1939), the opinion stresses, in similar language, the importance of proving a clear and unequivocal manifestation of an intent to devote the property to a public use, and then states:
>
> > " '* * * In some jurisdictions where the intention to devote land to a public use is doubtful, such doubt is resolved against the donor, but such is not the rule in this state.'
>
> See, also, on the central importance of the donor's intent, *State ex rel Thornton v. Hay*, 254 Or 584, 592, 462 P2d 671 (1969) ; Parks, *The Law of Dedication in Oregon*, 20 Or L Rev 111, 118-122 (1941). The circumstances may be such, however, that the law will imply an intent, or will regard the owner's actions as sufficient to constitute a dedication regardless of his actual intent:
>
> > " 'It is essential that the donor should intend to set the land apart for the benefit of the public.

Such intent is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. If the open and known acts of the donor are of such a character as to induce the belief that he intended to dedicate the way to public use, and the public and individuals act upon such conduct and proceed as if in fact there had been a dedication and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law would not permit him to assert that there was no intent to dedicate no matter what may have been his secret intent. * * *' *Portland Ry., L. & P. Co. v. Oregon City*, 85 Or 574, 583-584, 166 P 932 (1917).

"The necessary intent must be to dedicate the property to a *public* use. *Harris v. St. Helens*, supra, 72 Or at 388; 4 Tiffany, The Law of Real Property 333-334, § 1099 (3d ed 1939); 11 McQuillin, The Law of Municipal Corporations. 651, § 33.08 (3d ed rev. 1964) * * *." 259 Or at 518-19.

In the case at bar we simply cannot find in the evidence anything from which it can be ascertained that any owner intended, expressly or impliedly, to dedicate the sand dune area above the vegetation line to *any public recreational* use. Much of the property was in public ownership for many years by reason of tax foreclosures, but the county showed no intent to dedicate the property for recreational use; it sold the property back into private ownership.

(3). Custom.

The contention that the asserted public rights were acquired by custom is based upon an effort to extend the theory upon which *State ex rel Thornton v. Hay*, 254 Or 584, 462 P2d 671 (1969), was decided to property above the vegetation line. The court in *State ex rel Thornton v. Hay*, supra, emphasized:

"* * * This case deals *solely* with the dry-sand

area along the Pacific shore, and this land has been used by the public as public recreational land according to an unbroken custom running back in time as long as the land has been inhabited." (Emphasis supplied.) 254 Or at 595.

The subject property at bar is privately owned land above and east of the dry-sand area.

██ For custom to be the basis of such a claim, among other requisites the custom must have been exercised without interruption by anyone possessing a paramount right and it must have been used, as of right, with similarly situated lands elsewhere. *See State ex rel Thornton v. Hay,* supra, 254 Or at 596-97. These two requisites of the custom theory simply are not met by the evidence in the case at bar. For the past 14 years the private owners have been strenuously interrupting the allegedly customary use. There is no evidence that proves other similarly situated, privately owned sand dune areas along the Oregon coast have been used, as of right, as plaintiff claims the subject land has been customarily used.

We have considered the authorities from other jurisdictions cited by the plaintiff and found them unpersuasive. Our conclusions in the instant case are so clearly required by the opinions in *Muzzy v. Wilson,* supra, and *State ex rel Thornton v. Hay,* supra, that we see no purpose to be served in a further discussion of the applicable law.

Affirmed.