# LINDSEY, *Appellant,*
*v.*
# DAIRYLAND INSURANCE CO., *Respondent.*
## (TC 90300, SC 24692)

565 P2d 744

William B. Wyllie, Salem, argued the cause and filed a brief for appellant.

Bruce W. Williams, of Williams, Spooner & Graves, P.C., Salem, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Holman, Lent, and Tompkins, Justices.

LENT, J.

Denecke, C. J. did not participate in this decision.

**LENT, J.**

This is a declaratory judgment proceeding pursuant to ORS Chapter 28 to determine whether defendant is required to pay certain attorney fees and expenses of litigation. The trial court resolved the issue in defendant's favor, and plaintiff appeals.

On or about February 4, 1973, plaintiff suffered personal injuries in an automobile collision wherein one Roman was the driver of the other vehicle. Roman carried liability insurance with State Farm Fire and Casualty Co. Plaintiff was insured with defendant, and the policy, pursuant to ORS Chapter 743, contained coverage for "personal injury protection benefits" (PIP). Under that coverage defendant paid to plaintiff $3,420.79.

To assist him in his claim against Roman, plaintiff retained William B. Wyllie on a common type of contingency fee arrangement. After plaintiff had filed an action against Roman, State Farm agreed to pay its policy limits of $10,000 in settlement of the claim of plaintiff and of his wife for loss of consortium. Pursuant to the terms of settlement, State Farm paid to plaintiff and his wife, by draft, the sum of $6,579.21. State Farm sent another draft, in the amount of $3,420.79, to Wyllie. This draft was payable to the order of plaintiff and his wife "individually and as Husband and wife and their attorney, William B. Wyllie, and Dairyland Insurance Company." That draft has never been presented for payment and is in evidence in this case.

In this proceeding plaintiff contends that he is entitled to reimbursement "for defendant's pro rata share of the attorney's fees and other expenses reasonably and necessarily incurred" in making recovery against Roman. He alleges that such pro rata share is $1,162.10[1] and that he has demanded that defendant

---

[1] The exact amount is not in dispute, and we therefore express no opinion as to whether the parties have chosen the proper method of calculation. See State Farm Mut. Auto. Ins. v. Clinton, 267 Or 653, 655, n.1, 518 P2d 645 (1974).

endorse the draft in question and he be reimbursed in that sum. Defendant contends that it is entitled to the full amount of the draft, which is equal to its PIP payments to plaintiff.

The case was tried to the court without a jury. No testimony was taken. Plaintiff asserts in his brief that "The facts were stipulated at trial and are not in dispute." This is not accurate. There was no stipulation as to the facts other than that defendant, at the time of trial on June 1, 1976, had not requested arbitration from State Farm. That fact is not relevant to our decision. All of the evidence is in the form of exhibits, which show without dispute the following sequence of events:

1. January 8, 1975—Plaintiff filed his action against Roman.

2. March 6, 1975—Wyllie wrote to defendant asking whether defendant wanted him to include defendant's claim for PIP benefits paid and stating that if defendant wanted that claim included in the pending action, defendant's share of attorney fees would be in accordance with the contingent fee arrangement between plaintiff and Wyllie.[2] The letter also informed defendant that if it elected not to have Wyllie assist in the collection of "these sums" any settlement or judgment would preserve defendant's right to the PIP portion of defendant's claim.

3. March 10, 1975—Defendant rejected Wyllie's offer and replied that it would be handling its claim directly.

4. March 28, 1975—Defendant sent a letter to Wyllie notifying him of the exact amount of PIP benefits, drawing his attention to the provisions

---

[2]The contingent fee contract provided for one-third of the recovery if settled before trial and 40 percent of the recovery after trial.

of Oregon Laws 1971, ch 523, § 8.[3] This letter paraphrased the statute as follows:

"* * * [I]f an insurer has paid such required benefits, then it is entitled, to the extent of such payment, to the proceeds of any settlement or judgement that may result from the exercise of any right of recovery of the claimant against any motorist legally responsible for the bodily injury because of which such payment is made. The law further provides that the claimant shall hold in trust for the benefit of the insurer all rights of recovery which he shall have against such person to the extent of such benefits paid, and provides that claimant shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights. The statute further provides that, in the event of a recovery, the insurer shall be reimbursed out of such recovery for expenses, costs, and attorney's fees incurred by it in connection with such recovery."

The letter further noted that the insurance policy contained similar provisions and drew to Wyllie's attention the subrogation rights of defendant under both the statute and the policy. The letter concluded by granting defendant's consent to Wyllie's handling of plaintiff's personal injury case "on condition that you use your best efforts to recover for the insured, as trustees for this company, and for the benefit of this company, the medical expenses and disability benefits which have been paid by this company. In the event of any recovery you are to reimburse this company out of such recovery and without deduction for attorney's fees or costs the full amounts hereinabove set forth, rather than paying them to the insured."

5. March 31, 1975—Wyllie wrote to defendant acknowledging receipt of the March 28 letter, disavowing knowledge of "an Oregon statute" containing the provisions of the March 28 letter

---

[3]Later codified as ORS 743.830, since amended by Oregon Laws 1975, ch 784, § 9.

and again advising defendant that if it wished him to collect any portion of "this subrogated claim" on behalf of defendant he would do it pursuant to his letter of March 6. He concluded by saying that if he did not hear to the contrary he would assume such conditions would be acceptable.

6. April 1, 1975—Defendant sent to Wyllie a copy of ORS 743.825 "indicating our subrogation rights."[4]

Defendant's claim was included in plaintiff's action against Roman. All parties are in agreement that there was not much question as to the liability of Roman to plaintiff. While the cause was pending, Wyllie wrote State Farm "a thirty-day excess letter." Following that, the case was settled by State Farm's agreement to pay its full $10,000 of coverage, and State Farm issued its drafts as set forth hereinbefore. Aside from the draft and the correspondence above summarized, the only other evidence received upon trial was the discovery deposition of Wyllie taken September 18, 1975, a copy of the plaintiff's insurance policy with defendant, and defendant's file in connection with these events.

In its answer in the instant case, defendant denied plaintiff's right to any portion of the $3,420.79 and

---

[4]ORS 743.825 at that time provided:

"SECTION 7. (1) Every insurer that transacts motor vehicle liability insurance, if its insured is or would be held legally liable for damages for injuries sustained by a person to whom benefits required by ORS 743.800 have been furnished by another insurer, or for whom benefits have been furnished by a health insurer or health care service contractor, shall reimburse such other insurers and other contractors furnishing such benefits for the benefits so furnished in an amount not to exceed the damages so recoverable if the other insurer and contractor are entitled to such reimbursement by the terms of their policy or agreement. Disputes between insurers and contractors as to the issues of liability for and the amount of the reimbursement required by this subsection shall be decided by arbitration.

"(2) Findings and award made in an arbitration proceeding referred to in subsection (1) of this section are not admissible in any action at law or suit in equity."

pleaded two affirmative defenses: (1) that defendant had not authorized plaintiff or Wyllie to bring any collection proceeding against State Farm for defendant's subrogated interests and had expressly told Wyllie to refrain from any attempt to collect such damages from State Farm; (2) that defendant was subrogated to the extent of $3,420.79, that plaintiff had received a draft in that amount as payment for the damages to which defendant was subrogated, that plaintiff had refused defendant's demand to pay to it that sum, and that defendant had been damaged thereby. Defendant prayed for judgment against plaintiff in the amount of $3,420.79. Plaintiff, by reply, put in issue the affirmative defenses.

The trial judge issued a letter opinion on July 8, 1976, in important part as follows:

"I am impressed with the fact that not only was there an absence of agreement between Mr. Wyllie and defendant that the former should be entitled to recover attorney fees, but there were definite statements to the contrary in the exchange of correspondence.

"Also, the fact that State Farm paid its policy limits without trial convinces me that the attorney's fees claimed by plaintiff were not reasonably or necessarily incurred.

"Judgment may be entered in favor of defendant and against plaintiff as prayed for in defendant's answer."

Judgment was entered in favor of defendant and against plaintiff in the sum of $3,420.79.

In his brief plaintiff relies upon ORS 743.828, which would entitle him to prevail. That statute was not effective until January 1, 1976, and is not applicable to this case.

Plaintiff's first assignment of error is that the trial judge erred in its "conclusion" that the attorney fees claimed were not reasonably or necessarily incurred.

■■ He first urges that this court is not bound by the conclusions of the trial court, on the ground that the facts were stipulated and the conclusions drawn by the

trial court dealt with questions of law. He cites *Lee v. State Farm Auto. Ins.,* 265 Or 1, 507 P2d 6 (1973). That case is not in point. It involved only the construction of a contract, a pure question of law. As already noted, *this case did not proceed upon stipulated facts* and involves more than just the construction of a contract or other legal instrument. The conclusions of fact to be drawn from the evidence and inferences therefrom were initially for the trial court. In reviewing the trial court's findings, it therefore becomes necessary to first determine whether this matter sounds in law or in equity in order to ascertain our scope of review.[5]

A declaratory judgment proceeding under ORS Chapter 28 may sound either at law or in equity. *See Safeco Ins. Co. v. Leslie,* 276 Or 221, 554 P2d 469 (1976); *C & B Livestock v. Johns,* 273 Or 6, 539 P2d 645 (1975); *State Farm Fire v. Sevier,* 272 Or 278, 537 P2d 88 (1975). Neither the plaintiff in his complaint nor the defendant in its affirmative defenses requests any relief of an equitable nature. On the contrary, each party seeks a judgment for money. This cause, therefore, sounds in law, and we review as in an action at law. We are precluded, therefore, from testing the weight of the evidence which led to the trial judge's conclusion that the attorney's fees claimed were not reasonably or necessarily incurred. There is evidence, as set forth above, from which the trier of fact was entitled to draw that conclusion of fact. There is no error in this respect.

Since the fees for the recovery of the monies paid by defendant were not reasonably and necessarily incurred, plaintiff cannot recover upon the basis set forth in *State Farm Mut. Auto. Ins. v. Clinton,* 267 Or 653, 518 P2d 645 (1974). *See also Ridenour v. Nationwide Mutual Ins.,* 273 Or 514, 541 P2d 1377 (1975).

---

[5]In appeals on the equity side, we review *de novo.* ORS 19.125(3). At law we may not reexamine any fact found by the trier of fact below, unless we can affirmatively say there is no evidence to support it. Oregon Constitution, Amended Art VII, § 3.

Of course, as noted in *Ridenour,* such fees would be recoverable from the insurer if it had agreed to pay them. The trial court here found there was no such agreement, and plaintiff has not assigned error with respect to that finding.

Plaintiff's second assignment of error is that the trial court erred in overruling his objections to the form of judgment order.

■ Had defendant in its counter-claim simply asserted its subrogation rights under the policy and the statute in seeking judgment against plaintiff, we should have no problem in affirming the judgment. Defendant, however, went further in its pleading and alleged that plaintiff had received the $3,420.79 draft for those damages to which defendant is subrogated. Defendant thereby made it clear that its claim for subrogation was with respect to that particular draft and not with respect to the other monies received by plaintiff from State Farm.

By written objections to the form of judgment order filed prior to entry of judgment below, plaintiff pointed out that he has actually not received that sum of $3,420.79. The trial court overruled the objections and entered judgment as described herein.

State Farm has issued a draft. It is jointly payable to the order of three persons and the defendant corporation. It has been made an exhibit and is in the records of this cause. Plaintiff can control whether he endorses this draft and presents it for collection, but there is no evidence whatsoever in the record from which it could be found that plaintiff can require his wife, named on the draft as Victoria Lindsay (sic), William B. Wyllie, and Dairyland Insurance Company, or any of them, to endorse the draft in order to present it for collection. Neither Victoria Lindsey nor William B. Wyllie is a party to this cause. Neither the trial court nor this court has jurisdiction over either of them in this cause. The trial court's judgment against plaintiff for the sum of $3,420.79 is without basis. We

hold however that, as between plaintiff and defendant, the latter is entitled to the proceeds of the draft.

■ Where in any respect a judgment appealed from should be changed and this court is of the opinion that it can determine what judgment should have been entered in the court below, this court shall direct such judgment to be entered in the same manner and with like effect as decrees are entered in equity cases on appeal to this court. Oregon Constitution, Amended Art VII, § 3. We, therefore, order that this matter be remanded to the trial court to set aside that portion of its judgment granting judgment in defendant's favor and against plaintiff in the sum of $3,420.79. In other respects the judgment of the trial court is proper.[6]

Affirmed in part, reversed in part, and remanded.

_____

[6]We suggest this can best be done by entering a revised judgment order.