Argued and submitted January 15, reversed as to intervenor's claim and remanded for entry of judgment for intervenor; otherwise affirmed August 10, reconsideration denied December 9, 1988, petition for review allowed January 4, 1989 (307 Or 303)

McDONALD et al,
*Appellants,*

*v.*

HALVORSON et al,
*Respondents,*

*and*

STATE OF OREGON, by and through
the STATE LAND BOARD et al,
*Appellant,*

*v.*

HALVORSON et al,
*Defendants.*

(A8508-05317; CA A42945)

760 P2d 263

Robert C. Shoemaker, Portland, argued the cause for appellants Thomas A. McDonald and Michael Lynch. With him on the briefs were Jack L. Landau, and Lindsay, Hart, Neil & Weigler, Portland.

Linda DeVries Grimms, Assistant Attorney General,

Salem, argued the cause for appellant State of Oregon. With her on the briefs were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Kurt Burkholder, Assistant Attorney General, Salem.

Garry P. McMurry, Portland, argued the cause and submitted the briefs for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This dispute arose between plaintiffs, the owners of property on a portion of the Oregon Coast known as "Big Whale Cove," and defendants, the owners of adjacent property to the north on which "Little Whale Cove" is situated, over whether each had access to the other's cove.[1]

Plaintiffs brought this lawsuit seeking to quiet title against defendants' claim of a prescriptive easement over a trail on plaintiffs' land that runs south from Little Whale

---

[1] This is a sketch of the area involved in the case.

Cove to Big Whale Cove, and requesting a declaratory judgment that their property includes a portion of the "dry-sand area" of Little Whale Cove, giving them access to the entire "dry-sand area" of Little Whale Cove under *Thornton v. Hay,* 254 Or 584, 462 P2d 671 (1969). Defendants asserted, as a counterclaim, their right to the prescriptive easement to Big Whale Cove. The state intervened to assert the public's right to use the "dry-sand area" of Little Whale Cove and to enjoin defendants from interfering with that right. No party claimed public access from land to Little Whale Cove.[2]

The trial court ruled against defendants on their counterclaim. Concerning plaintiffs' and the state's claims, the trial court held that the beach at Little Whale Cove does not contain "dry-sand area" subject to public recreational use under *Thornton v. Hay, supra.* The trial judge concluded that the pool at Little Whale Cove

> "is not part of the ocean. It is a fresh-water pool occasionally influenced by the Pacific Ocean. The dry sand area is a beach abutting the pool, situated entirely on private land. The beach is not dry sand area along the Pacific Shore open to the public for recreational use."

The court also held that, in any event, any "dry-sand area" of Little Whale Cove lies to the north of the boundary line between plaintiffs' and defendants' property, negating plaintiffs' claim of access.

Plaintiffs and the state appeal.[3] Both argue that the trial court erred in ruling that Little Whale Cove does not contain "dry-sand area" along the Pacific shore subject to the rule in *Thornton v. Hay, supra.* Plaintiffs also argue that the trial judge erred in holding that plaintiffs' land does not contain any of the "dry-sand area" of Little Whale Cove. The underlying action is in equity and, therefore, we review *de novo.* ORS 19.125; *Rogelis v. Pettis,* 49 Or App 537, 539, 619 P2d 1339 (1980), *rev den* 290 Or 449 (1981); *Lindsay v. Dairyland Insurance Co.,* 278 Or 681, 688, 565 P2d 744 (1977).

Little Whale Cove is a small, coastal inlet, located about five miles south of the city of Depoe Bay. The mouth of

---

[2] The land surrounding Little Whale Cove is privately owned, and there is no public access to the cove from land.

[3] Defendants do not challenge the trial court's dismissal of their counterclaim.

the cove lies between two rocky points directly to the north and south. The cove rises from the ocean over a sloping rocky foreshore up to a flat sill where it opens into a tidal pool surrounded by a narrow beach. The beach, in turn, rises to steeply-sloped sandstone cliffs and upland vegetation. Two small freshwater streams flow into the tidal pool from the east. The rocky points and the sill at the westward edge of the cove are of basalt and are covered at or near the water level with barnacles, mussels and various forms of marine algae. The tidal pool has a smooth, sandstone bottom which slopes upward to the beach from a depth of about seven feet at the base of the sill. The tidal pool is about 150 feet wide from the inside edge of the sill to the beach.

Testimony, as well as numerous exhibits, indicate that the fan-shaped configuration of the cove results from a constant pattern of wave action entering the narrow opening at its mouth.[4] The bottom of the cove is scoured clean in most places by wave action and in sheltered areas exhibits a rippled texture in sediments deposited by the waves. The steeply sloped berm at the edge of the pool was formed by wave action. The waves deposit kelp, seaweed and driftwood on the beach and at the base of the cliffs on either side of the pool forming a "strand line."

The beach itself is composed of coarse grains of basaltic matter and small snail shells, sea urchin spines, broken clam shells and other debris from coastal animals. Fragments of mussel shells are also found on the beach. These materials are washed onto the beach from the ocean.

Mean high tide lies seaward of the cove's mouth, about 50 feet from the inside edge of the sill. Ocean waves do not reach the interior of the cove during low tides. However, the two small streams at the east end of the cove continue to trickle water into the pool, keeping the water level at the lip of the sill. The result is a stratification of the water in the pool,

---

[4] The parties dispute the frequency with which ocean waves enter Little Whale Cove, but the record is clear that they come in often. Halvorson testified that high tides come into the cove periodically. Halvorson's predecessor in interest testified that white foaming ocean would crash through the opening into Little Whale Cove during "any tide" and that the pool was predominantly ocean water as a result of the waves constantly washing in and out. Plaintiff Lynch, as well as the state's surveyor, testified that they personally observed waves breaking through the mouth of Little Whale Cove.

with the lighter freshwater lying on the surface of the pool and the heavier saltwater from the ocean settling on the bottom. During high tides, the ocean waves wash back into the pool, increasing the salinity.

A variety of marine plants and animals inhabits the cove. The craggy sill is covered with red and green algae, intermixed with small intertidal organisms. Inside the pool live marine snails, mussels, hermit crabs, shore crabs and an abundance of shrimp-like crustaceans. They are marine organisms and cannot survive continuous exposure to fresh water.

A line of vegetation is visible on the upper boundary of the beach above the tidal pool. Experts at trial characterized this "upland" vegetation as typical of coastal areas in the Pacific Northwest. The vegetation nearest the beach consists primarily of silverweed, which is a perennial plant that becomes dormant in late fall or winter, although its extensive root system survives and sends up new shoots in the spring. During winter or when exposed to ocean waves, the tops of silverweed turn brown. The plants may be carried away by waves "sufficient to move the beach." The amount and color of silverweed visible on the ground on the south side of Little Whale Cove fluctuate seasonally. Landward from the beach, the silverweed becomes mixed with other upland species of vegetation including sea rocket, grasses, thistle, Queen Anne's lace, rushes, horsetails and, ultimately, willows and Douglas fir. Between the visible line of vegetation and the mean high tide line, there is no vegetation of any other freshwater upland species.

There are two issues: 1) Whether Little Whale Cove contains "dry-sand area" that is subject to the public's right of recreational use under *Thornton v. Hay, supra,* and 2) whether a portion of any "dry-sand area" at Little Whale Cove is located on plaintiffs' property.

In *Thornton v. Hay, supra,* the Supreme Court determined the rights of the public in Oregon's shoreline. The court held that "ocean-front lands from the northern to the southern border of the state ought to be treated uniformly." 254 Or at 595. Applying the English doctrine of custom, the court held that the "dry-sand area" along the shore "has been used by the public as public recreational land according to an unbroken custom running back in time as long as the land has

been inhabited" and the public had acquired an easement for recreational purposes between the mean high tide line and the visible line of vegetation. 254 Or at 595; *see also State Highway Commission v. Fultz,* 261 Or 289, 292, 491 P2d 1171 (1972).

 The evidence shows that Little Whale Cove is part of the ocean shore created by the Pacific Ocean and that the beach at Little Whale Cove lies between the mean high tide line and the visible line of vegetation. Surveyors for both the state and defendants plotted the mean high tide line just outside the mouth of the cove, 50 feet from the inside edge of the flat, rock sill. Every witness who testified on the subject identified the silverweed growth line as the seaward edge of the upland vegetation. The tidal pool and the beach at Little Whale Cove lie between the mean high tide line and the visible upland vegetation. Therefore, we hold that Little Whale Cove contains "dry-sand area" within the meaning of *Thornton v. Hay, supra,* which is subject to the public's right of recreational use as a matter of law.[5]

Defendants argue, and the trial court found, that, because the beach in this case does not "abut" mean high tide, but is separated from mean high tide by a basaltic sill and a tidal pool, *Thornton v. Hay, supra,* does not apply. Defendants contend that, because Little Whale Cove's unique geographic characteristics "separate" its beach from mean high tide, it is not subject to the public's right of use. That is the sort of tract-by-tract analysis that the Supreme Court sought to avoid. The court employed the term "dry-sand area" to designate that part of the ocean shore between the mean high tide line and the visible upland vegetation line (also known as the backshore). It did not limit its ruling literally to dry sand. 254 Or at 595.

 Whether a particular parcel of the coast is made of fine sand, coarse pebbles or solid rock is irrelevant to a determination whether it is "dry-sand area." Similarly, the frequency with which a beach is washed by ocean waves is of no

---

[5] Although it is only legally necessary to prove that Little Whale Cove is a part of the ocean shore between the mean high tide line and the visible line of upland vegetation in order for it to contain "dry-sand area," the trial court's finding that the cove is not "part of the ocean" and does not contain "dry-sand area" along the Pacific shore is without support, given the uncontroverted evidence of the cove's marine characteristics.

consequence, if the beach lies between the lines of mean high tide and visible vegetation. If that were not so, the public's use of Oregon's beaches would depend upon complex presentations of biological, botanical and geomorphological data specific to each and every beach, cove and inlet on the coast.[6] The result, inevitably, would be a patchwork quilt of coastal lands, some subject to public use and others not, with no clear means available to the using public to tell which is which. The proper question for the trial court was whether the beach at Little Whale Cove is situated between the lines of mean high tide and visible vegetation.[7] The evidence shows that this beach is so situated.

Defendants argue that applying *Thornton v. Hay, supra* to their cove results in a taking of property without just compensation and due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 18, of the Oregon Constitution.

■ ■ There is no merit in defendants' due process argument.[8] Defendants contend that *Thornton v. Hay, supra,* applies only to the particular beach at issue in that case and that its application without a beach-specific determination of public customary use denies them due process. In *Thornton,* the Supreme Court merely confirmed the public's right of use in the "dry-sand area" of Oregon's beach land, which the public has always assumed to be a part of the public beach. Although the "dry-sand area" belongs to the property owners, it has always been subject to the public's recreational easement. Application of *Thornton* does not violate defendants'

---

[6] The vast number of exhibits and experts in this case is indicative of such presentations.

[7] The state acknowledges that there are coastal areas, such as a beach fronted by a parking lot, where there is no natural vegetation demarcating the "dry-sand area." We do not suggest that in such areas *Thornton v. Hay, supra,* would extend the public's right inland to wherever vegetation is first encountered.

[8] Defendants erroneously equate Fourteenth Amendment "due process" with Article I, section 10, which provides that "every man shall have remedy by due course of law for injury done to him in his person, property, or reputation." That language only assures a civil plaintiff's right to a remedy that existed at common law. *See State v. Hart,* 299 Or 128, 140, 699 P2d 1113 (1985); Linde, "Without 'Due Process'," 49 Or L Rev 125, 136-37 (1970). Therefore, Article I, section 10, only offers defendants a legal remedy for a claim arising from injury to their property that has its legal source outside section 10 itself; it is not a "due process" clause.

due process rights.[9]

■ Defendants also fail to establish the primary element for a "taking" claim, that is, a protected property interest.[10] State law is the source of the sticks that constitute a property owner's bundle of rights. *Ruckelshaus v. Monsanto Co.,* 467 US 986, 1001, 104 S Ct 2862, 81 L Ed 2d 815 (1984). *Thornton v. Hay, supra,* 254 Or at 589-90, made it clear that any title to ocean shore land between the lines of mean high tide and visible vegetation has historically been encumbered with the public's recreational easement. *See also State Highway Commission v. Fultz, supra,* 261 Or at 292. The court in *Thornton* stressed that the "dry-sand area" along the ocean shore is *sui generis.* It said:

> "While the foreshore is 'owned' by the state[11], and the upland

---

[9] Defendants also argue that, in *State Highway Commission v. Bauman,* 16 Or App 275, 517 P2d 1202 (1974), *rev den* (1974), we rejected application of *Thornton v. Hay, supra,* to all "dry-sand area" along the Pacific shore without proof of the elements of custom with respect to a particular beach. That is not so. *Bauman* did not involve "dry-sand area." The plaintiffs there sought to *expand Thornton* to include sand dunes landward of the vegetation line. Moreover, contrary to defendants' contention, we have, in fact, acknowledged that "[t]he public rights described in [*Thornton v. Hay, supra*] * * * exist all along the Pacific shore of Oregon." *Hay v. Dept. of Transportation,* 75 Or App 119, 121 n 1, 705 P2d 240 (1985), *aff'd* 301 Or 129, 719 P2d 860 (1986).

Defendants also claim that the Supreme Court "required" the state to prove customary use on a beach-specific basis in *State Highway Commission v. Fultz, supra.* Again, that is incorrect. Because *Fultz* was commenced before *Thornton v. Hay, supra,* was decided, the state put on evidence of prescriptive use of the beach in question. The Supreme Court, however, found it unnecessary to review the evidence, holding that *Thornton* had disposed of the issue of the public's rights in the "dry-sand area."

Finally, as an affirmative defense to the state's claim, defendants attempt to argue that application of *Thornton v. Hay, supra,* to Little Whale Cove is inconsistent with the "Oregon Beach Bill," ORS 390.605 through ORS 390.770. Defendants contend that, because the *statutory* coordinate system definition of the vegetation line falls across the mouth of Little Whale Cove, it is outside the public's recreational easement. However, the coordinate vegetation line does not define the public's right of recreational use. It marks the line beyond which upland property owners may not construct any structure or appurtenance except pursuant to a permit issued by the State Department of Transportation. ORS 390.640.

[10] Defendants' reliance on a right to recover on the basis of " 'fairness' in protecting investment backed expectancies" does not necessarily state a "taking" claim under Article I, section 18. Oregon has not recognized an "investment-backed expectancy" argument in cases under Article I, section 18. "Although the basic thrust of the Fifth Amendment and Art. I, § 18, is generally the same, [citation omitted] the criteria of compensable 'taking for public use' under Art. I, § 18, are not necessarily identical to those * * * under the [F]ifth [A]mendment." *Suess Builders v. City of Beaverton,* 294 Or 254, 259 n 5, 656 P2d 306 (1982).

[11] ORS 390.615 states that the state owns the foreshore or the wet-sand area, that is, the beach seaward of the mean high tide line.

is 'owned' by the patentee or record-title holder, neither can be said to 'own' the full bundle of rights normally connoted by the term 'estate in fee simple.' 1 Powell, Real Property § 163, at 661 (1949)." 254 Or at 591.

The court found that for as long as there has been an institutionalized system of land tenure in Oregon the public has freely exercised the right to use the "dry-sand area" on the whole Oregon coast for recreational purposes. 254 Or at 596. It further found that

> "the custom of the inhabitants of Oregon and of visitors in the state to use the dry sand as a public recreation area is so notorious that notice of the custom on the part of persons buying land along the shore must be presumed." 254 Or at 598.

Thus, the court in *Thornton* merely declared a right of use which the public has always had:

> "The rule in this case, based upon custom, is salutary in confirming a public right, and at the same time it takes from no man anything which he has had a legitimate reason to regard as exclusively his." 254 Or at 599.

Defendants have no protected property interest in the public's easement over the "dry-sand area,"[12] and therefore there can be no "taking."[13]

---

[12] Defendants rely on *Nollan v. California Coastal Commission,* 483 US ____, 107 S Ct 3141, 97 L Ed 2d 677 (1987), which held that when a state conditions approval of a development permit on the dedication of a public easement by a private landowner, the condition must bear a close "nexus" to the purpose of the development permit. *Nollan* did not address the situation where the public had a *preexisting* right of use. Although the dissent suggested that, under the California Constitution, the public had such a prior right, 483 US at ____ [97 L Ed 2d at 696], the *Nollan* majority noted that California case law did not support this interpretation of the California Constitution and that the issue had not been raised by the parties; therefore, it expressly declined to resolve that question of California law. 483 US at ____ [97 L Ed 2d at 687]. However, under Oregon law, defendants' title has always been encumbered with the public's recreational easement.

[13] In *Hay v. Bruno,* 344 F Supp 286, 287 (D Or 1972), a three-judge federal district court panel decided that the plaintiffs' property in *Thornton v. Hay, supra,* was not taken unconstitutionally. The court stated that real property law is left to the individual states to develop and administer and that a state is free to make a change in that law without violating the due process clause as long as it is not a "sudden change * * * unpredictable in terms of relevant precedents." 344 F Supp at 288-89, *quoting Hughes v. Washington,* 389 US 290, 296-97, 88 S Ct 438, 19 L Ed 2d 530 (1967) (Stewart, J., concurring). The federal district court concluded that the *Thornton* decision produced no such sudden change in either the law or policy of the State of Oregon. The court held that

> "[t]here was no unpredictable result here. The action of the Supreme Court of Oregon was consistent with and is supported by a number of decisions from other jurisdictions which confirm the right of a state under similar circumstances to protect and preserve its beaches for the benefit of the people." 344 F Supp at 289.

■ Finally, defendants argue that the state is barred from asserting the public's right of recreational use in the "dry-sand area," because defendants have a "reasonable investment-backed expectancy of exclusive use of Little Whale Cove." The state characterizes this argument as claiming estoppel against the state. Defendants fail to make a case under either theory.

The facts giving rise to defendants' argument are that, in 1971, defendant Halvorson asked the Oregon Department of Justice whether the state had any interest in Little Whale Cove. At that time, Halvorson was considering purchase of Little Whale Cove. A deputy attorney general advised Halvorson in a letter that the state currently had no interest. That conclusion was explicitly based on the wrong premise that "the property has no sandy beach because of a high basaltic cliff arising directly up from the ocean." Halvorson admitted that the deputy told him that the state's legal position with regard to Little Whale Cove could change. As a result of the deputy's advice, Halvorson claims, he invested more money in developing Little Whale Cove than he would have if the state had claimed an interest. Because Halvorson knew that the conclusion was based on erroneous facts and that the state's position might change, there is no estoppel.

■ In support of their argument, defendants rely primarily on *Kaiser Aetna v. United States,* 444 US 164, 100 S Ct 383, 62 L Ed 2d 332 (1979), a federal "taking" case, where the Supreme Court held that Hawaiian law had created a private property interest in Hawaiian fishponds. 444 US at 166-67. Private owners of a fishpond known as Kuapa Pond (a shallow lagoon separated from Maunalua Bay by the Pacific Ocean and a barrier beach) invested substantial amounts of money to create a boat access between the fishpond and the ocean on the basis of advice from the Corps of Engineers that no permits for the development or operation of the pond were needed. The federal government then asserted a navigational servitude over the pond. The Court held that, if the government wished to make what was formerly a private fishpond into a public aquatic park after petitioners had gone as far as they had, it could not require them to allow the public free access without paying just compensation. 444 US at 180. In that case, as well as in the other federal cases cited by defendants, state law had created a protected property interest.

Here, however, defendants have no protected property interest in the public's easement over the "dry-sand area." Therefore, as a matter of law, defendants cannot have an investment-backed expectancy.

Halvorson testified that, if he had known of the public's right to use the cove, he would have developed the site as larger parcels rather than as an urbanized development. The mere fact that money has been invested in a particular level of development does not transform this case into a *Kaiser Aetna* taking. A mere unilateral expectation is not a property interest entitled to protection. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 US 155, 161, 101 S Ct 446, 66 L Ed 2d 358 (1980).

■ We now turn to the issue of whether plaintiffs' property includes any portion of the "dry-sand area." That depends upon whether the visible line of vegetation is north or south of plaintiffs' property line.[14]

*Thornton v. Hay, supra,* describes the vegetation line as "the seaward edge of vegetation where the upland supports vegetation." 254 Or at 586. The court noted that the vegetation line remains "relatively fixed," while the western edge of the "dry-sand area" is subject to dramatic moves eastward or westward in response to erosion and accretion. 254 Or at 589. The trial court found the property line involved here

> "to be south of the permanent natural vegetation line; that is, the line is landward of the * * * 'dry sand' area surrounding Little Whale Cove.
>
> "* * * [T]he actual boundary line is south of or at least in the grassy area and it is not on the beach. Consequently, I find that the plaintiffs have no access to the dry sand area surrounding Little Whale Cove."

Plaintiffs do not contest the trial court's characterization of the visible line of vegetation as the "permanent natural vegetation line."[15] They argue, however, that the evidence shows

---

[14] All of the surveyors located the property line in about the same place.

[15] The state suggests that the public's right of use is analogous to a "rolling easement," moving with the "dry-sand area" as its location is altered over time by erosion, accretion and other natural forces. *See, e.g., Moody v. White,* 593 SW2d 372, 379 (Tex Civ App 1979) (public easement on beach shifts with accretion).

the property line to be north of that line, at least when the silverweed turns brown or is washed away by winter waves.

We find that the vegetation line at Little Whale Cove remains relatively fixed, although the color may change. Moreover, the overwhelming weight of evidence shows that, regardless of where the vegetation may be located at any given time, the vegetation line remains north of the property line. Photographs in evidence and expert testimony presenting a detailed survey of the species of vegetation found within Little Whale Cove and their location placed the property line in the zone of vegetation where the silverweed becomes mixed with grasses and herbs ("meadow species"), about 40 feet south of the seaward edge of vegetation as it is marked by the silverweed. Thus, there is no "dry-sand area" of Little Whale Cove on plaintiffs' property. Plaintiffs' claim of access is defeated.

We reverse the trial court's ruling that Little Whale Cove does not contain "dry-sand area" subject to the public's right of recreational use and remand for entry of an appropriate judgment; we affirm its ruling that the plaintiffs' property does not include any of the "dry-sand area" of Little Whale Cove.

Reversed as to intervenor's claim and remanded for entry of judgment for intervenor; otherwise affirmed.