Argued and submitted March 12, Court of Appeals affirmed, petition for judicial review dismissed as moot May 20, 1986

HAY et al,
*Petitioners on review,*

*v.*

OREGON DEPARTMENT OF TRANSPORTATION et al,
*Respondents on review.*

(CC 83-394; CA A32892, A32904; SC S32179)

719 P2d 860

William Dickas, of Kell, Alterman & Runstein, Portland, argued the cause and filed the petition for petitioners on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents on review.

JONES, J.

## JONES, J.

This case arises from plaintiffs' challenge to the Department of Transportation's statutory authorization of the use of the beach in front of their Cannon Beach motel as a parking area. Three issues are presented: (1) Is our review of a Court of Appeals decision that upheld the validity of a rule rendered moot when an agency promulgated a new rule superseding the challenged rule? (2) May a circuit court determine the validity of a rule in the course of a civil action for nuisance and trespass when the claims arise from a state agency's actions pursuant to a rule? (3) If the circuit court may determine a rule's validity, was the rule at issue in fact valid, thereby justifying defendant agencies' motion for judgment on the pleadings?

Starting September 21, 1979, defendant agencies, the Oregon Department of Transportation (Department), the Oregon Transportation Commission, the State Land Board, and the Division of State Lands, acting pursuant to OAR 736-24-005, closed Cannon Beach to vehicular traffic. Before the Department's amendment in 1979, the former rule permitted unrestricted motor vehicle traffic on the ocean beach now at issue. The rule as amended reserved 1,300 feet of dry-sand beach[1] for public parking from sunrise to sundown from

---

[1] ORS 390.605(2) defines the "ocean shore" as "the land lying between extreme low tide of the Pacific Ocean and the line of vegetation as established and described by ORS 390.770." ORS 390.770 sets the line of vegetation through detailed descriptions following the Oregon Coordinate System, ORS 93.330. *See State ex rel Thornton v. Hay,* 254 Or 584, 586, 462 P2d 671 (1969). One commentator described the dry-sand beach:

"Upland from the wet sand or intertidal strip between low and ordinary high tide lies the so-called dry-sand portion of the beach. Because it is subject to occasional tide water action, this part of the beach is devoid of vegetation up to the extreme high water mark or vegetation line. Rarely awash, its accumulations of logs are favorite picnic spots. At ordinary high tide all public traffic on the beach moves landward to this area." McLennan, *Public Patrimony: An Appraisal of Legislation and Common Law Protecting Recreational Values in Oregon's State-Owned Lands and Waters,* 4 Envtl L 317, 356 (1974).

The state owns the foreshore or wet-sand area, that is, the beach seaward of the mean high tide line. ORS 390.615.

In *Thornton,* plaintiffs here were defendants in an action to enjoin them from fencing off the dry-sand area on their property. This court held that "the state has an equitable right to protect the public in the enjoyment of those rights [to use the dry-sand area for recreation]." 254 Or at 587-88. The court based the right on the public's customary use of the dry-sand area. See Note, *The English Doctrine of Custom in*

March 2 to September 30 annually. ORS 390.668(1) authorizes the Department to

> "* * * establish zones on the ocean shore where travel by motor vehicles or landing of any aircraft except for an emergency shall be restricted or prohibited. After the establishment of a zone and the erection of signs or markers thereon, no such use shall be made of such areas except in conformity with the rules of the department."

Plaintiffs, William and Georgianna Hay, own the New Surfview Motel and the adjacent dry-sand area on Cannon Beach. The area reserved for parking includes dry-sand beach owned by plaintiffs. On May 5, 1983, plaintiffs filed a complaint in Clatsop County Circuit Court against the agencies, contending that the use of plaintiffs' beach as a parking area was both a trespass and a nuisance, thereby reducing the value of their property.

The agencies filed a joint motion for partial summary judgment on liability under ORCP 47 and for judgment on the pleadings under ORCP 21B. The motion for partial summary judgment contended that (1) plaintiffs' complaint is a collateral attack on a rule and such an attack must be brought in the Court of Appeals pursuant to ORS 183.400(1); (2) plaintiffs failed to exhaust their administrative remedies; (3) plaintiffs' claims have been decided against them in *State ex rel Thornton v. Hay,* 254 Or 584, 462 P2d 671 (1969); (4) plaintiffs failed to notify the state of their claim within 180 days pursuant to ORS 30.275(2)(b); and (5) plaintiffs did not commence the action within the proper statute of limitations. The agencies' ORCP 21B. motion contended that plaintiffs' pleadings failed to state a claim in trespass or nuisance.

On July 24, 1984, the circuit court granted the agencies' joint motion "on all grounds." Plaintiffs appealed the trial court's judgment and filed a separate petition with the Court of Appeals for review of OAR 736-24-005(2)(d)(A) pursuant to ORS 183.400(1).[2] The Court of Appeals upheld

---

*Oregon Property Law:* State ex rel Thornton v. Hay, 4 Envtl L 383 (1974), and Note, *Public Access to Beaches,* 22 Stan L Rev 564, 582-85 (1970), for discussions of customary rights.

[2] ORS 183.400(1) provides:

"The validity of any rule may be determined upon a petition by any person to

the validity of the rule, 75 Or App 119, 705 P2d 240 (1985), and it affirmed without opinion the circuit court decision, 75 Or App 125, 705 P2d 242 (1985). We allowed review, consolidating the two Court of Appeals decisions.

I. *Is plaintiffs' challenge to OAR 736-24-005(2)(d)(A) moot?*

Pursuant to ORS 183.400(1), plaintiffs challenge OAR 736-24-005(2)(d), which prohibited motor vehicle travel on Cannon Beach, but allowed vehicle parking "[b]etween sunrise and sunset from Ecola Court in Cannon Beach southerly 1300 feet * * * March 1 to September 30." Plaintiffs contend that the rule exceeded the Department's statutory authority. The Department contends that ORS 390.660[3] and 390.668(1) authorized it to promulgate the rule.

■ While the Court of Appeals decision was pending, the Department revised the rule effective March 29, 1985, so as to allow parking on the same stretch of beach from May 25, 1985, through September 2, 1985. This rule, however, has expired by its own terms, and the Department has not enacted a similar rule. Currently, the Department does not allow parking in the disputed area. Therefore, before considering the rule's validity, we must determine whether the rule's expiration renders the challenge to the rule moot.

Plaintiffs contend that the challenge is not moot because the Department "remains free to re-adopt the rule any time it chooses." Defendants argue that "it may become necessary * * * to pass similar rules involving this or other portions of the beach," and that this court should address the controversy because it is "capable of repetition, yet evading review." Plaintiffs assert that even if the challenge is moot,

the Court of Appeals in the manner provided for review of orders in contested cases. The court shall have jurisdiction to review the validity of the rule whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question, but not when the petitioner is a party to an order or a contested case in which the validity of the rule may be determined by a court."

[3] ORS 390.660 provides:

"The Department of Transportation is hereby directed to protect, to maintain and to promulgate rules governing use of the public of property that is subject to ORS 390.640, property subject to public rights or easements declared by ORS 390.610 and property abutting, adjacent or contiguous to those lands described by ORS 390.615 that is available for public use, whether such public right or easement to use is obtained by dedication, prescription, grant, state-ownership, permission of a private owner or otherwise."

this court "has discretion to address questions of public importance when there is a likelihood that they will be raised again."

The parties rely on this court's statement in *Perry v. Oregon Liquor Commission,* 180 Or 495, 498-99, 177 P2d 406 (1947), that "[w]here the [moot] question is one involving the public welfare, and there is a likelihood of it being raised again in the future, a court in the exercise of its discretion may decide it for the guidance of an official administrative agency." Recent cases have cast doubt on the validity of the *Perry* holding. *See, e.g., State ex rel Oregonian Publishing Co. v. Sams,* 298 Or 329, 332-33, 692 P2d 116 (1984). Assuming that we do have the authority to decide moot questions, we decline to exercise it in this case. The challenge to the expired rule is dismissed as moot.

II. *May a circuit court examine the validity of a rule in a civil action?*

In the circuit court, plaintiffs claim damages stemming from the agencies' alleged nuisance or trespass, and our dismissal of the direct challenge to the rule does not render plaintiffs' claim for damages moot. If the rule, while in effect, was invalid, the parking would not have been legally authorized and could constitute trespass or nuisance.

The agencies moved for summary judgment on liability, contending that plaintiffs' trespass and nuisance claims collaterally attacked the validity of OAR 736-24-005. The agencies contend that "[g]iven the fact that defendants' conduct with respect to the dry-sand area of plaintiffs' beach involved only the promulgation and enforcement of an administrative rule, an action for trespass or nuisance would necessarily involve an implicit determination concerning the validity of the rule." The agencies further contend that plaintiffs may challenge the rule only in the Court of Appeals pursuant to ORS 183.400(1), and that plaintiffs should ask for a stay from the circuit court, petition the Court of Appeals for a decision on the validity of the rule, and then proceed to a trial on the merits in circuit court.

Plaintiffs respond that the rule's validity is irrelevant to their claims because they "seek a determination that the

combination of the regulations by which all cars are prohibited everywhere else on Cannon Beach and are funneled only onto plaintiffs' beach operates, in practice, as a trespass and as an unreasonable nuisance." Plaintiffs argue that if this court accepts the agencies' position, "there results an irrational anomaly: circuit courts in Oregon may continue to inquire, where necessary, into the authority and operation of statutes; in a proper case, they may determine that a particular statute violates a constitutional right or exceeds constitutional authority; they may not, however, do the same with agency regulations." Thus, the parties' contentions present us with a twofold issue: first, may plaintiffs' suit be characterized as a collateral attack on the validity of OAR 736-24-005; and, second, if it is a collateral attack on the rule, may the circuit court hear such a challenge?

■■■■ Plaintiffs challenge the rule's validity by alleging that the Department, while acting pursuant to the rule, caused a trespass or nuisance. A plaintiff claiming trespass must show that the defendant invaded the exclusive possession of his property, *Martin v. Union Pacific Railroad,* 256 Or 563, 565, 474 P2d 739 (1970), and a plaintiff claiming private nuisance must show that the defendant unreasonably and substantially interfered with the use and enjoyment of his property, *Jewett v. Deerhorn Enterprises, Inc.,* 281 Or 469, 473, 575 P2d 164 (1978). A plaintiff claiming public nuisance must show "an unreasonable interference with a right which is common to members of the public generally." *Raymond v. Southern Pacific Co.,* 259 Or 629, 634, 488 P2d 460 (1971). The injury must be an injury beyond that suffered by the public. *Id.*

■■■ In this case, the rule's validity would determine whether the parking was privileged because of legal authorization for the agencies' acts or because the agencies authorized a use that otherwise would constitute a public or private nuisance. Under the Restatement (Second) of Torts § 211 (1965), an entry pursuant to legislative authority is privileged. Section 211 provides:

> "A duty or authority imposed or created by legislative enactment carries with it the privilege to enter land in the possession of another for the purpose of performing or exercising such duty or authority in so far as the entry is reasonably

necessary to such performance or exercise, if, but only if, all the requirements of the enactment are fulfilled."[4]

■ We agree with the agencies that plaintiffs collaterally attack the rule's validity. However, we reject the agencies' contention that the Oregon Administrative Procedures Act (APA), ORS 183.310 to 183.725, does not allow the circuit court to determine the validity of this rule.

The APA divides the universe of agency actions into rules, ORS 183.310(8), and orders, ORS 183.310(5), and further defines orders as "orders in contested cases" or "orders in other than contested cases." Under the APA judicial review provisions, the pigeonholing of the agency action determines whether the circuit court or the Court of Appeals will review the agency action. *Dinsdale v. Young,* 300 Or 78, 80-82, 706 P2d 944 (1985). The Court of Appeals reviews rules, ORS 183.400(1), and orders in contested cases, ORS 183.482. Circuit courts may review orders in other than contested cases, ORS 183.484, and may review rules when an order or a rule's enforcement is challenged, ORS 183.400(2); *Sterling v. Cupp,* 290 Or 611, 629, 625 P2d 123 (1981).

The first step in the APA analysis of the proper avenue for judicial review, determining the nature of the agency's action, is usually straightforward.[5] OAR 736-24-005 is a rule, defined by ORS 183.310(8) as "any agency directive, standard, regulation or statement of general applicability that

---

[4] The comments to section 211 explain that the privilege applies to this case. Comments *a, d,* and *f* provide:

"*a.* The duty or authority dealt with in this Section may be created or conferred by statute, ordinance, or order enacted or made in pursuance of legislative action. Illustrations of such an order are regulations of boards of health and other administrative bodies.

"* * * * *

"*d.* Whether the actor is a public official or a private person is immaterial to the existence of the privilege. * * *"

"* * * * *

"*f.* In order to be privileged under the rule stated in this Section, the entry must be for the purpose for which the privilege is given. If the entry is for an ulterior purpose under the cloak of the legislative privilege, the actor's entry is a trespass."

[5] See *Dinsdale v. Young,* 300 Or 78, 706 P2d 944 (1985), for a case in which the nature of the agency's action was not clear.

implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency."

The second step in the APA analysis is determining whether subsection (1) or (2) of 183.400 governs the judicial review of this rule. ORS 183.400(2) provides:

"The validity of any applicable rule may also be determined by a court, upon review of an order in any manner provided by law or pursuant to ORS 183.480 or upon enforcement of such rule or order in the manner provided by law."

ORS 183.400(2) does not apply here because plaintiffs do not challenge an order or the enforcement of a rule. Therefore, under the agencies' interpretation of the APA, judicial review is available only under ORS 183.400(1). ORS 183.400 does not authorize the Court of Appeals to award damages, *Burke v. Children's Services Division,* 288 Or 533, 544-45, 607 P2d 141 (1980), and it limits the Court of Appeals review to the rule itself, the statutes authorizing the rule, and "copies of all documents necessary to demonstrate compliance with applicable rulemaking procedures." ORS 183.400(3).

The agencies' analysis assumes that the APA is the exclusive means to challenge agency rules and that the circuit court cannot consider the validity of the rule at issue. However, ORS 183.400(1) is not exclusive on its face; it states that the "validity of any rule *may* be determined upon a petition by any person to the Court of Appeals." (Emphasis added.) An article by Professor Barbara Safriet explains the shortcomings of construing the APA as the sole avenue for judicial review of agency actions taken pursuant to a rule:

"All of these difficulties [with APA judicial review] are perhaps best illustrated by a hypothetical, but entirely plausible, scenario. Assume that the state departments of health and forestry decide to spray insecticides over private lands to prevent the spread of fruit flies. They issue nothing more than a directive instructing their staff members to carry out the spraying. A property owner whose land has been sprayed seeks to challenge the action as unauthorized and contrary to law. Where should such a petitioner seek review, and pursuant to what method? * * * If [the agency action is characterized as a rule,] what relief is available to the property owner? Money damages cannot be awarded under Oregon Revised Statutes section 183.400. (Money damages might be available under the Oregon Tort Claims Act, Or. Rev. Stat. §§ 30.260-.300

(tort actions against public bodies).) What if the property owner learned beforehand that the agencies were going to spray and wanted to stop them from doing so? Injunctive relief is not available for review of rules under section 183.400, although the court of appeals could, if it invalidated the rule, enter a protective order under section 183.486(2) pending further agency proceedings. In short, whether the property owner sought money damages or an injunctive relief, the circuit court would provide the only effective forum. Thus, a finding of APA exclusivity, combined with its either/or classification scheme, could deprive some petitioners of any meaningful redress." Safriet, *Judicial Review of Government Action: Procedural Quandaries and a Plea for Legislative Reform,* 15 Envtl L 217, 239-40 (1985) (footnoted material in parentheses).

Professor Safriet well describes the dilemma facing these plaintiffs, a dilemma created not by the APA but by the agencies' strained and unwarranted interpretation of the APA. The APA does not mandate the cumbersome procedure advocated by the agencies, and we do not so construe it. The suggested procedure would unnecessarily delay and confuse this state's system for the judicial review of agency acts. *See generally* Safriet, 15 Envtl L 217, *supra.*

In this case, the circuit court could hear challenges to the rule's validity. Our decision does not mean that anyone who dislikes a rule may challenge that rule in circuit court; ORS 183.400(1) authorizes the Court of Appeals to hear such a challenge. Only when a party places a rule's validity at issue in a separate civil action may circuit courts determine a rule's validity. This is such a case. We now turn to the issue whether plaintiffs' pleadings were sufficient to state a claim and to survive the agencies' summary judgment motion.

III. *Did the trial court err in granting defendants' motion?*

The circuit court allowed defendants' motion "on all grounds," and any of the agencies' contentions, if valid, could have been dispositive of plaintiffs' claims. Before discussing the merits of plaintiffs' claims, we consider the validity of the rule. As we stated above, the rule's validity is crucial to determining whether the circuit court correctly held that the agencies were not liable for trespass or nuisance.

Our inquiry is whether the rule is within the discretion allowed by the general policy of the ocean shore statutes,

ORS 390.605 to 390.770, and the specific statutes authorizing the Department to establish traffic zones on the beaches, ORS 390.660 and 390.668. ORS 183.400(4)(b); *see Planned Parenthood Assn. v. Dept. of Human Res.,* 297 Or 562, 574, 687 P2d 785 (1984). Although this court gives "some degree of respect" to an agency's interpretation of a statute, *Springfield Educ. Assn. v. Springfield School Dist. No. 19,* 290 Or 217, 221, 621 P2d 547 (1980), the interpretation of a statute is "a function of law ultimately for the court," *id.* at 233.

The issue involves parking on the dry-sand beach, and a brief background aids the analysis of the policy expressed in the ocean shore statutes.

The record demonstrates that beach-goers have operated automobiles on Cannon Beach since the early years of this century. The circuit court in *State ex rel Thornton v. Hay, supra,* recognized that

"* * * private motor cars have used this beach in large numbers since the '20's or early '30's. In fact, one of the main access roads for vehicles to the beach has been immediately adjacent to defendants' property and vehicles have used all portions of the beach depending on the state of the tide." *State ex rel Thornton v. Hay,* No. 27-102, slip op. at 3 (Clatsop County Circuit Court Jan. 6, 1969) (J.S. Bohannon, J.), *aff'd.,* 254 Or 584, 462 P2d 671.

In *Hay v. Bruno,* 344 F Supp 286, 287 (D Or 1972), a three-judge federal district court panel, in deciding that plaintiffs' property[6] was not taken unconstitutionally, stated:

"* * * At least since 1892, the general public without requesting or obtaining permission from the adjacent property owner openly and continuously used for vehicular traffic and recreational purposes all of the beach at Cannon Beach, including the dry sand area to which plaintiffs have record title.

"Since 1892, the State of Oregon exercised authority over Cannon Beach by regulating the speed and use of vehicles * * *." (Footnote omitted.)

---

[6] The property at issue in *Thornton* and in *Hay v. Bruno,* 344 F Supp 286 (D Or 1972), although owned by plaintiffs here, is not the same property now at issue. Plaintiffs state that the " 'Surfsand' area in dispute in the 1968 case lies somewhat north of the 'Surfview' property which is the subject of this case."

Photographs from the early 1900s show not only extensive automobile traffic, but also parking along beaches at Cannon Beach and Newport. Straton, Oregon's Beaches: A Birthright Preserved (1977) (published by Oregon State Parks and Recreation Branch). The 1967 legislature enacted the original statute expressly authorizing the state's jurisdiction over dry-sand beaches. HB 1601 (introduced February 22, 1967; now codified as ORS 390.610); *see* McLennan, *Public Patrimony: An Appraisal of Legislation and Common Law Protecting Recreational Values in Oregon's State-Owned Land and Waters,* 4 Envtl L 317, 356-57 (1974) (describing the origins of HB 1601); Note, *The English Doctrine of Custom in Oregon Property Law:* State ex rel Thornton v. Hay, 4 Envtl L 383, 384-86 (1974); Straton, *supra,* at 21-23.

In 1967, ORS 390.730 allowed the establishment of zones on the ocean beaches "wherein there shall be no travel by motor vehicles." The 1967 Legislative Assembly created an interim committee to study the Commission's authority to regulate traffic on beaches.[7] As a result of the committee's findings, the legislature approved the addition of the word "restrict" to the Department's authority. Or Laws 1969, ch 601, § 18.

The agencies argue that the inclusion of "restrict" in ORS 390.668(1) allows the Department to establish zones where parking is permitted. The Court of Appeals, apparently persuaded by this argument, held that "[t]he power to *restrict* the movement of motor vehicles in a zone on the beach includes the power to allow them to park in the zone and to designate the area within the zone and the time for parking." *Hay v. Dept. of Transportation, supra,* 75 Or App at 122 (emphasis in original). We agree with the Court of Appeals and the agencies that the rule was within the Department's statutory authority.

ORS 390.660 authorizes the Department "to protect, to maintain and to promulgate rules governing use of the public of * * * property subject to public rights or easements declared by ORS 390.610." (ORS 390.610 governs the dry-

---

[7] An example of the uses the Department has authorized is the permission to launch dories from the dry-sand area and to park vehicles necessary for such activities. OAR 736-24-005(2)(d)(B).

sand beach.) ORS 390.668(1) authorizes the Department to "establish zones on the ocean shore where travel by motor vehicles * * * shall be restricted or prohibited." The interim committee's report demonstrates that the legislature amended ORS 390.668 so that the Department could allow "legitimate uses of vehicles on the beach," specifically mentioning the need for parking. Report of the Oregon Legislature Interim Committee on Highways, January 1969, 26-27.

■ ■ To restrict, rather than to prohibit, motor vehicle traffic means that the Department may allow traffic within spatial and temporal limits consistent with the general public's recreational use of the beach. For example, the Department could allow traffic only at certain times, set speed limits, or allow only certain types of vehicles.[8] If the Department can restrict the time, place, use, speed and type of traffic on beaches within its jurisdiction, it may also designate places for vehicles to park. The power to restrict traffic, *i.e.,* the power to confine traffic within limits, includes the power to establish parking areas. The legislature delegated to the Department the authority to establish such parking zones.

■ We conclude that the rule is within the Department's

---

[8] The interim committee's report stated that:

"One of the major problems on the Oregon beaches, particularly on the northern coast, is the unrestricted use of motor vehicles. This provides a hazard to safety, interferes with many people's enjoyment of the beaches and is an eyesore. On the other hand, there are some legitimate uses of vehicles on the beaches. *Many beach areas are inaccessible and there are no available areas for off-beach parking.* There is some need to use vehicles on the beach for gathering firewood, boat launching, and the like.

"The State Highway Commission [now the Department of Transportation] presently has the authority to set aside beach areas and prohibit vehicle use thereon, (ORS 390.730). [Now ORS 390.668.] In only two of those few areas that have been placed under this prohibition, has the Highway Commission imposed anything less than a complete prohibition, and in those instances vehicular use of the beach is prohibited during the summer season.

"The few areas where motor vehicle use is prohibited are the beaches adjacent to the cities of Gearhart, Cannon Beach (partly), Manzanita, Rockaway, and Lincoln City * * *."

"* * * * *

"The Committee also believes that the existing legislation does not give the Highway Commission sufficient flexibility in regulating motor vehicles. A strict reading of the statute indicates the Highway Commission can only prohibit vehicles and cannot partially restrict their use. * * *" Report of the Interim Committee on Highways 26-27 (Jan. 1969) (emphasis added).

statutory authority. The general policy of the statutory scheme is to "do whatever is necessary to preserve and protect scenic and recreational use of Oregon's ocean shore." ORS 390.610(4). The rule preserves recreational uses by allowing limited parking on a small stretch of beach. The rule frees most of the beach from vehicle traffic and parking, thus protecting the scenic uses of the beach.

 The agencies did not authorize a trespass on plaintiffs' property because the agencies allowed parking pursuant to a valid rule. *See* Restatement (Second) of Torts, § 211, *supra.* Because the plaintiffs have not alleged that the agencies have exceeded their authority under the rule, the agencies' alleged trespass was privileged. Further, the circuit court correctly held that the parking was neither a private nor a public nuisance. The parking was not a private nuisance because the history of vehicular traffic on the beach demonstrates that the parking authorized by the rule was not unreasonable as a matter of law.[9] The parking also was not a public nuisance because plaintiffs did not allege injuries special to their property beyond any injury to the general public.[10] Plaintiffs' allegations that the parking area was

---

[9] This court has held that "no cause of action [in private nuisance] lies against an individual member of the public who uses the public way for travel in conformance with the rules laid down therefor." *Jacobson v. Crown Zellerbach,* 273 Or 15, 21, 539 P2d 641 (1975). In *Jacobson,* we stated that if the government permits an activity that is "sufficiently invasive *to amount to a taking* of adjacent land, an action for inverse condemnation lies against the government." *Id.* (emphasis in original); *see also Thornburg v. Port of Portland,* 244 Or 69, 73, 415 P2d 750 (1966) (noise from an airport could rise to the level of a taking of plaintiff homeowners' property). However, plaintiffs did not contend that their property had been taken in violation of the state or federal constitution, and we express no opinion on whether such a cause of action would lie under the facts of this case.

[10] Plaintiffs pled in relevant part that:

"IX

"* * * [T]he parking lot constitutes an unreasonable, obnoxious and dangerous nuisance which threatens the safety of the public and operates as a trap for unwary motorists. The dry sands are unsuited for vehicular travel, because they can't support the weight of a motor vehicle. Motorists are mired daily in the designated parking area. Their vehicles gouge and rut the sands; motorists weave often out of control in an effort to extricate themselves from the area. Motorists using the area also regularly venture too near the surf, where long waves from a rising tide suck the wheels of their vehicles into the wet sands. The rising incoming surf then submerges, rolls and tosses the vehicle, not only destroying the vehicle, but threatening the safety and lives of those who venture too close to the rolling surf.

"Even where the motorists don't become mired in the sands the sheer volume

hazardous and unsightly are injuries suffered by the public, not injuries special to plaintiffs. We affirm the Court of Appeals.

On the appeal (CA A32892), the Court of Appeals is affirmed; the petition for judicial review (CA A32904) is dismissed as moot.

---

of their vehicles occupy the most desirable areas of plaintiffs' ocean shore rendering noisy, dangerous and ugly one of the most beautiful sections of the Oregon coast, and also rendering the shore unusable for any recreational purpose contemplated by the Oregon Supreme Court. The defendants have thereby depreciated plaintiffs' property by an amount far in excess of $50,000."