Argued and submitted February 28, reversed and remanded in part; otherwise affirmed September 6, respondent's motion for reconsideration filed September 22, allowed by opinion November 29, 1995
See 138 Or App 120, 906 P2d 842 (1995)

Randy HAGER
and Linda Hager,
*Appellants,*

*v.*

TIRE RECYCLERS, INC.,
a Washington corporation,
Developers Insurance Company,
a California corporation, and
Contractors Bonding and Insurance Company,
a Washington corporation,
*Defendants,*

*and*

GROAT BROTHERS, INC.,
a Washington corporation,
*Respondent.*

(9211-08008; CA A82492)

901 P2d 948

David F. Sugerman argued the cause for appellants. With him on the briefs was Paul & Sugerman.

James M. Callahan argued the cause for respondent. With him on the brief was Callahan & Shears, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiffs appeal from a judgment entered in favor of defendants in this case involving claims of intentional trespass and negligence. We reverse and remand.

The facts relevant to the appeal are not disputed. Plaintiffs own a 19.5-acre parcel of property through which two unnamed tributaries of the Sandy River run. During the wet season, the streams run at approximately 150 gallons per minute. During the dry season, the streams run at "a trickle." Plaintiffs have built and maintained a series of ponds on their land and have stocked at least one of them with rainbow trout.

Directly upstream from plaintiffs' land lies a parcel of property on which a pile of waste tires had accumulated over the years. Plaintiffs and others complained to the Oregon Department of Environmental Quality (DEQ) about the tires. Pursuant to its statutory authority, DEQ proceeded to take steps to abate what it determined was the nuisance created by the waste tire pile.[1] DEQ contracted with defendant Tire Recyclers, Inc., to remove the tires. Tire Recyclers, Inc., in turn, contracted with defendant Groat Brothers, Inc. (Groat), to perform the removal.

Groat removed the tires, both by hand and by heavy hauling equipment, in November, on a rainy day during the wet season when the stream flowing down to plaintiffs' property ran full. The staging area from which Groat's workers operated was located on the bank of the stream. In the process of removing the tires, Groat significantly disturbed the streambed and banks and caused at least 263 tons of silt to flow downstream, onto plaintiffs' property and into their ponds. Plaintiffs complained to Groat and to DEQ, but Groat continued operations. Ultimately, DEQ required Groat to stop removing the tires until the dry season, at which time the removal operation was completed.

Plaintiffs sued both Tire Recyclers, Inc., and Groat on theories of intentional trespass and negligence. Plaintiffs alleged that defendants were negligent in several particulars,

---

[1] ORS 459.780(4) provides that the DEQ "may abate any danger or nuisance created by waste tires * * *."

specifically, in conducting the removal operation in the rain, in failing to create settling ponds to trap the sediment, in failing to place straw or other erosion control devices on the soil to retard erosion, in failing to construct straw bale berms or similar devices to catch sediment, in using heavy equipment in and around the stream bed and in failing to notify plaintiffs before defendants commenced work. Plaintiffs claimed both compensatory and punitive damages.[2]

Defendants alleged five affirmative defenses, three of which are germane to this appeal. In their first, defendants alleged that, because the State of Oregon ordered them to remove the tires in order to protect the public, any trespass that occurred was a "matter of public necessity," and therefore privileged. In their second, defendants alleged that, because plaintiffs had complained to DEQ about the tires, they had effectively consented to any trespass that resulted. In their fifth, they alleged that they are likewise subject to a statutory privilege under ORS 459.780, which provides that local and state governments are liable for actions taken in the removal of waste tires only if their conduct constituted gross negligence, recklessness, or willful, wanton or intentional misconduct.

Plaintiffs moved for a directed verdict on the affirmative defense of statutory privilege, and the trial court granted the motion. Plaintiffs then moved for a directed verdict on their intentional trespass claim, but the trial court denied that motion. Defendants moved for a directed verdict on the trespass claim, on the basis of its remaining affirmative defenses of consent and public necessity. The trial court granted that motion, concluding that, as a matter of law, plaintiffs had consented to the trespass. Defendants also moved for a directed verdict on the claim for punitive damages, and the trial court granted that as well. The court then sent the surviving negligence claim to the jury, which returned a verdict for defendants.

---

[2] Plaintiffs also alleged a claim for strict liability based on abnormally dangerous activity, but withdrew that claim at trial. In addition, plaintiffs included a claim for breach of contract, on which defendants ultimately prevailed. Plaintiffs do not challenge the disposition of that claim on appeal.

Plaintiffs appealed. During the pendency of the appeal, they settled their claims concerning Tire Recyclers, Inc. Groat is the sole respondent on appeal.

Plaintiffs assign error to the trial court's entry of a directed verdict on the claim for intentional trespass. According to plaintiffs, there is no evidence of their consent to defendants' trespass, and the fact that they complained to DEQ about the waste tire pile cannot reasonably be construed as consent to have defendants enter onto their property to remove the tires. Groat offers no defense of the trial court's decision on the ground of consent. Instead, it argues that its trespass was privileged, because it acted at the behest of DEQ to remove a public nuisance.

On appeal from a judgment entered on a directed verdict, we consider the evidence in the light most favorable to the nonmoving party. *Shockey v. City of Portland*, 313 Or 414, 422-23, 837 P2d 505 (1992), *cert den* 507 US 1017, 113 S Ct 1813, 123 L Ed 2d 444 (1993).

■■ Among the few defenses to an action for trespass is consent. *See Gordon Creek Tree Farms v. Layne et al*, 230 Or 204, 220-21, 368 P2d 737 (1962). A possessor is not, however, obligated to maintain a constant vigil to ward off the advances of a neighbor; to the contrary, it is the neighbor's burden to avoid interfering with the possessor's interests that is "especially constant." *Id.* at 220. To establish that a possessor has consented to the entry of another, there must be evidence of "willingness in fact" that the "particular conduct" that constitutes entry may occur. *Restatement (Second) of Torts* §§ 892, 892A (1965). Inaction may or may not constitute consent, depending on the circumstances:

> " 'A mere failure to object to another's entry may be a sufficient indication or manifestation of consent, if the possessor knows of the other's intention to enter, and has reason to believe that his objection is likely to be effective in preventing the other from coming. On the other hand, the fact that the possessor knows of the intention to enter and does not prevent it is not necessarily a manifestation of consent, and therefore is not necessarily permission.' "

*Denton v. L.W. Vail Co.*, 23 Or App 28, 33, 541 P2d 511 (1975) (quoting *Restatement (Second) of Torts* § 330, *comment c* (1965)).

■ In this case, there is no evidence that plaintiffs gave consent to have 263 tons of silt flow onto their property. There is, indeed, no evidence that they were willing to have any amount of silt flow from the adjoining land to theirs. At trial, defendants relied on evidence that plaintiffs knew of the general condition of the waste tire pile and of its proximity to the stream, and that they initiated the complaints to DEQ that ultimately led to the removal of the tires that caused the siltation to occur. That does not establish that plaintiffs consented to Groat's trespass. There is no evidence, for example, that plaintiffs knew that Groat would remove the waste tires during the wet season and that they stood idly by as Groat removed the tires at that time. In fact, the evidence is that, upon learning of Groat's operations, plaintiffs complained to Groat and to DEQ. There is, in other words, no evidence of consent to trespass, and the trial court erred in directing a verdict for defendants on that basis.

■ There remains the question whether the trial court's decision was nevertheless correct on the ground of privilege. Defendants' argument on that matter is somewhat perplexing. According to defendants, because they acted under contract with DEQ, which, in turn, acted in accordance with statute, their actions are privileged. As authority for their argument, defendants rely on *Restatement (Second) Torts* § 211 (1965), and on *Hay v. Dept. of Transportation*, 301 Or 129, 135-36, 719 P2d 860 (1986), which cited the *Restatement* with approval. Section 211 of the *Restatement* provides:

> "A duty or authority imposed or created by legislative enactment carries with it the privilege to enter land in the possession of another for the purpose of performing or exercising such duty or authority in so far as the entry is reasonably necessary to such performance or exercise * * *."

That section, as the court in *Hay* recognized, applies to "an entry pursuant to legislative authority." 301 Or at 135. Entry pursuant to legislative authority, however, is the subject of defendants' fifth affirmative defense, which the trial court dismissed from the case before trial.[3] Groat has not challenged that ruling on appeal, and, as a result, we cannot

---

[3] In fact, the defense of statutory privilege had already been dismissed from the case by the time the court heard argument on defendants' directed verdict motion. In their arguments on that motion, defendants asserted the privilege of public necessity. That, however, is an entirely different matter than the privilege that they argue

consider its argument. We conclude that the trial court erred in directing a verdict in favor of defendants on the intentional trespass claim.

Plaintiffs next assign error to the trial court's denial of their motion for a directed verdict on the intentional trespass claim. They argue that the uncontradicted evidence is that Groat trespassed by intentionally causing large quantities of silt to flow onto their property. Groat's only response to that argument is that any trespass was privileged.

We review the trial court's decision to deny the directed verdict motion to determine whether the uncontradicted evidence entitled plaintiffs to prevail as a matter of law. *Hall v. State*, 43 Or App 325, 328, 602 P2d 1104 (1979), *aff'd* 290 Or 19, 619 P2d 256 (1980). To prevail on an intentional trespass claim, there must be proof of an intentional invasion of a possessor's interest in the exclusive possession of land. *Martin et ux v. Reynolds Metals Co.*, 221 Or 86, 90, 342 P2d 790 (1959), *cert den* 362 US 918 (1960). Industrial and agricultural operations that cause airborne particles to settle upon the land of another are, by now, familiar examples of the tort. *Id.*; *see also Ream v. Keen*, 314 Or 370, 374-75, 838 P2d 1073 (1992); *McGregor v. Barton Sand & Gravel, Inc.*, 62 Or App 24, 26, 660 P2d 175 (1983).

In this case, the evidence is uncontradicted that Groat's intentional acts caused a substantial quantity of silt to flow onto plaintiffs' property. On appeal, Groat does not contest that. Instead, it argues that its trespass was privileged, because it abated a nuisance pursuant to statutory authority. As we already have held that defense is not properly before us. We conclude that the trial court erred in failing to grant plaintiffs' motion for a directed verdict on their claim for intentional trespass.

Plaintiffs next assign error to the trial court's failure to deliver jury instructions on their intentional trespass

on appeal. The privilege of public necessity is limited to action necessary to avert an impending public disaster, "such as a conflagration, flood, earthquake or pestilence." *Restatement (Second) of Torts* § 196, *comment a* (1965). Oregon courts have yet to recognize such a privilege, and, in any event, there is no evidence that the nuisance created by the pile of waste tires in this case represented such an impending public disaster as to bring it within the confines of that defense.

claim. Our disposition of the preceding assignment makes it unnecessary to address that argument.

■ Plaintiffs finally assign error to the trial court's failure to submit their claim for punitive damages. Groat argues that the error, if any, was harmless, in the light of the fact that the jury concluded that Groat had not been negligent. According to Groat, if it was not negligent, then it could not have acted in a way that justified the imposition of punitive damages.

■ ■ Withdrawal of a claim for punitive damages is the equivalent of entry of a directed verdict on the issue. Therefore, we review the evidence in the light most favorable to plaintiffs. *Faber v. Asplundh Tree Expert Co.*, 106 Or App 601, 605, 810 P2d 384 (1991). Punitive damages on a claim for intentional trespass may be awarded when there is proof of "an intentional, unjustifiable infliction of harm with deliberate disregard of the social consequences * * *." *McElwain v. Georgia-Pacific*, 245 Or 247, 249, 421 P2d 957 (1966). It is not necessary to show actual malice or ill will. *Senn v. Bunick*, 40 Or App 33, 41, 594 P2d 837 (1979).

In this case, there is evidence that Groat knew that its removal of the tires would cause silt to flow downstream to plaintiffs' property. There is also evidence that Groat knew that, if the work were done in the dry season, the siltation would have been minimized or eliminated, and that, even during the rainy season, the employment of various erosion control measures could have minimized or eliminated the damage to plaintiffs' property. That is evidence of intentional disregard of plaintiffs' rights.

Groat does not explain why the jury's verdict in its favor on the negligence claim precludes a verdict for plaintiffs for punitive damages on their intentional trespass claim beyond the conclusion that such verdicts would be inconsistent. Given the variety of potential reasons for the jury's decision on the negligence claim, we do not understand why that is necessarily so. Moreover, the jury's negligence verdict was limited to the negligence particulars pleaded in the complaint. The jury could well determine that plaintiffs are entitled to punitive damages on bases other than those specified in plaintiff's negligence claim. There was evidence, for

example, that Groat could have waited until the dry season to remove the tires, that it was asked to wait at least until DEQ evaluated the situation before beginning the removal operation, that it could have dug channels to divert the flow of the silt away from plaintiffs' property and that it could have stopped operations when it discovered that the silt control measures that it did use were not working as planned. We cannot say, at this juncture, that the jury cannot weigh that evidence and reasonably conclude that Groat acted in deliberate disregard of plaintiffs' rights. The trial court erred in withdrawing plaintiffs' claim for punitive damages.

Judgment on plaintiffs' claim for intentional trespass reversed and remanded for determination of compensatory and punitive damages, if any; otherwise affirmed.