Argued and submitted May 11, affirmed November 4, 1998

Robert H. BAUGH,
*Appellant,*

*v.*

MAINTENANCE AND MACHINE ERECTORS, INC.,
an Oregon corporation,
*Respondent.*

(96-CV-0298-ST; CA A98634)

968 P2d 392

Steven D. Bryant argued the cause for appellant. With him on the brief was Bryant, Emerson & Fitch.

Thomas M. Christ argued the cause for respondent. With him on the brief was Mitchell, Lang & Smith.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

Plaintiff brought this tort action seeking to hold defendant liable for injuries that plaintiff sustained on the job. The sole issue on appeal is whether defendant is immune from tort liability under ORS 656.018(4) (1993) as a client of a worker leasing company. Under the parties' arguments, that issue turns chiefly on whether plaintiff was employed on a temporary or permanent basis.[1] The trial court granted summary judgment for defendant, concluding that the record was insufficient to permit a factfinder to determine that plaintiff was employed on a temporary basis and that defendant therefore was immune as a matter of law. We affirm.

For the most part, the facts are not disputed. Defendant, Maintenance and Machine Erectors, Inc. (MME), is a metal fabrication and construction company. MME obtains most of its workers through Mid-Oregon Labor Contractors, Inc. (Mid-Oregon). At the time plaintiff was injured, Mid-Oregon was a worker leasing company, licensed as such by the Department of Consumer and Business Services (DCBS) under ORS 656.850 (1993). In early 1995, plaintiff, a journeyman welder, interviewed with Nelson Howard, MME's owner and president, for a position with MME. During the interview, they discussed an airport tower project bid that MME anticipated winning and for which plaintiff's skills appeared well-suited. Howard decided he was willing to put plaintiff to work on the project, if MME got it, and that until then, plaintiff could work on other projects "around [MME's] shop." At the end of the interview, Howard told plaintiff that MME obtained all of its workers through Mid-Oregon. Howard therefore directed plaintiff to Mid-Oregon to fill out an application. Mid-Oregon hired plaintiff to work at MME's plant beginning February 6, 1995, and put him to work before

---

[1] Defendant argues for the first time on appeal that, if ORS 656.018(4) (1993) does not immunize it from tort liability, then subsection (1)(a) does. In the temporary services area, we have determined that both the temporary services agency and the client may be employers, in which case, if either employer provides workers' compensation coverage, both are immune. *See, e.g., Perry v. Express Services, Inc.,* 143 Or App 321, 325, 923 P2d 673 (1996), *rev den* 324 Or 560 (1997). Because we affirm based on the argument presented to the trial court, we do not decide whether we should reach the subsection (1)(a) argument despite the lack of preservation.

MME knew whether it would receive the airport bid. Shortly after beginning the position, plaintiff suffered a back injury while working on a project for MME. Plaintiff sought and recovered workers' compensation benefits (except for vocational assistance) through Mid-Oregon's insurer. He then brought this tort claim against MME, seeking to obtain further recovery for his back injury.

In its summary judgment motion, MME, as the moving party, had the burden of demonstrating that there were "no genuine issues of material fact" and that it was "entitled to judgment as a matter of law." *See Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997) (quoting *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978)). On appeal, we view the record in the light most favorable to plaintiff, the nonmoving party. *Id.* The only significant factual dispute regards the terms on which plaintiff was hired. Plaintiff stated that he was told that he was hired on a "temporary" basis, with the understanding that if "things worked out" he might be kept permanently. That meant, plaintiff explained, that if he could back up his resume and perform the work that he told them he was capable of performing, he would continue with MME indefinitely. Mid-Oregon asserted that it hired plaintiff to fill an available full-time, permanent position. Plaintiff focuses on that factual dispute because, in his view, if he was a "temporary" employee, MME cannot claim immunity as a client of a worker leasing company. Plaintiff contends that his deposition testimony on the point is sufficient to create a material issue of fact precluding summary judgment.

■ Employees injured on the job are usually limited to workers' compensation benefits as their exclusive remedy. The workers' compensation statute immunizes complying employers from common-law liability for work-related injuries. *See generally* ORS 656.018 (1993). That general immunity extends to "worker leasing companies" and their clients through ORS 656.018(4) (1993),[2] which provides:

---

[2] Plaintiff was injured in February 1995. Portions of the relevant statutes were amended in both 1995 and 1997. Therefore, we quote only from the 1993 version of the statutes.

We note that the 1997 amendments resolve disputes of this kind for cases arising after their effective date. ORS 656.018(5)(a) (1997) states that the "exemption

"The exemption from liability given an employer under this section applies both to a worker leasing company and the client to whom workers are provided when the worker leasing company and the client comply with ORS 656.850(3)."

Plaintiff's argument against MME's claim of tort immunity is premised on ORS 656.850(1) (1993), which defines "worker leasing company" as

"a person who provides workers, by contract and for a fee, to work for a client *but does not include a person who provides workers to a client on a temporary basis to supplement the existing work force in special situations* such as employee absences, professional skill shortages, seasonal workloads and special assignments and projects with the expectation that the position or positions will be terminated upon completion of the special situation."

(Emphasis added.) The assumption that underlies plaintiff's argument is that whether a leased worker is permanent or temporary—and thus, whether MME enjoys immunity—hinges only on a fact-bound inquiry into the particular terms on which an individual employee was hired and put to work for the client. Under the pertinent statutes and implementing regulations,[3] however, that is only part of the inquiry.

■ ORS 656.855 charges the director of DCBS with the task of establishing a licensing system for worker leasing companies. As part of that charge, the director is authorized to prescribe the form and contents of records that a licensee

from liability given an employer under this section applies to a temporary service provider, as that term is used in ORS 656.850, and also extends to the client to whom workers are provided when the temporary service provider complies with ORS 656.017." Thus, under the 1997 version of the statute, MME would be immune even if plaintiff's employment was on a temporary basis.

[3] The policies of providing workers' compensation coverage for subject workers and immunity for complying employers are necessarily parallel and complimentary. The administrative rules bearing on who is a subject worker and the compliance obligations of employers therefore must be considered in a tort case in which ORS 656.018(4) (1993) is raised in defense. The director's rules are not absolutely "binding," in the sense that if the rules are beyond the director's authority or otherwise vulnerable to challenge, the court can so hold in a case such as this. *See Alto v. State Fire Marshal*, 319 Or 382, 390-91, 876 P2d 774 (1994); *Hay v. Dept. of Transportation*, 301 Or 129, 136, 719 P2d 860 (1986). But absent a proper collateral challenge to the rules, they should be given full effect in resolving the immunity dispute.

must maintain. ORS 656.855(1)(d) (1993). Primarily, the rules require worker leasing companies to file written notice when they provide leased workers to a particular client and to ensure workers' compensation coverage for those leased workers. OAR 436-050-0410(1) and OAR 436-050-0400(1)-(2).

Anticipating the complications that may arise in distinguishing "temporary workers" from "leased workers," the director specially promulgated rules for that purpose. OAR 436-050-0420(1), which was in effect at the time of plaintiff's injury, states:

> "A person who provides a worker to work for a client will be considered to be providing the worker on a 'temporary basis' *only if* there is a contemporaneous written documentation, retained by either the client or the temporary service provider, which indicates the duration of the work performed *and* the worker is provided under one or more of the following conditions: * * *"

(Emphasis added.) The rule then specifies circumstances in which a properly documented work arrangement will be deemed to be on a "temporary basis"—*i.e.*, to replace a worker who is gone on temporary leave for a determinate period of time; to staff a seasonal workload; or to fill a professional skill shortfall. OAR 436-050-0420(1)(a)-(f). The director further has decided by rule that as long as *any* workers provided by contract and for a fee are not provided on a "temporary basis," the person furnishing the workers will be considered a worker leasing company. OAR 436-050-0420(2). Moreover, if a worker leasing company provides both leased workers and workers on a temporary basis, it must also maintain payroll records that show specifically which workers are provided on a temporary basis, thus clearly differentiating between the "leased" and the "temporary workers." OAR 436-050-0420(3).

In effect, then, all workers of licensed worker leasing companies are presumed to be leased workers; to overcome that presumption, worker leasing companies must take affirmative steps to document "temporary" status at the time a worker is provided to the client. They must also distinguish between "leased" and "temporary" workers in their payroll records. The director's rules serve to resolve doubts in favor of

deeming a business to be a worker leasing company rather than a temporary service provider and deeming workers provided by a worker leasing company to be leased rather than temporary workers.

Here, the parties do not dispute that Mid-Oregon had jumped through all regulatory hoops necessary to be a properly licensed and complying worker leasing company. It obtained a worker leasing company license from DCBS. It complied with OAR 436-050-0410(1) by notifying DCBS that it was providing leased workers to MME and submitting proof of workers' compensation coverage. It, in fact, met its obligations under ORS 656.017 and ORS 656.407 (1993) to provide workers' compensation insurance for all workers supplied to MME, and plaintiff received the benefit of it having done so.[4] Mid-Oregon did not avail itself of the procedures to designate plaintiff as a temporary worker. For Mid-Oregon to do that, not only would it have had to hire plaintiff on a "temporary basis" within the meaning of the statute, but in addition, Mid-Oregon would have had to take affirmative steps to document plaintiff as a temporary worker and distinguish between "leased" and "temporary workers" in its payroll records. It did neither. Plaintiff has not pointed to any contemporaneously written documentation indicating the duration of the work to be performed by plaintiff. Nor did Mid-Oregon clearly distinguish leased workers from temporary workers or distinguish plaintiff from all other workers provided by Mid-Oregon, as OAR 436-050-0420(3) would require.[5]

---

[4] Plaintiff relies on the fact that Mid-Oregon's insurer, in the processing of the workers' compensation claim, successfully denied him vocational assistance on the basis of his "temporary" status. As our analysis demonstrates, that fact is not relevant to the question of MME's immunity as Mid-Oregon's client. But it is worth pointing out that plaintiff's argument in that regard demonstrates the problems with using the labels "permanent," "leased," and "temporary." ORS 656.850(1) (1993) distinguishes between leased workers and those provided on a temporary basis. On the other hand, OAR 436-120-0310, the administrative rule on which the insurer relied to deny plaintiff's vocational assistance eligibility, distinguishes only between "permanent, year-round employment" and "other" jobs. See OAR 436-120-0310(1)(g), (3), and (6). Neither the terminology nor the concepts behind it are the same. Thus, the fact that a worker is employed on something other than permanent, year-round basis does not answer—at least not necessarily—whether the worker is employed on a temporary basis.

[5] Plaintiff argues that he should be considered a temporary worker because he was listed on MME's records as a "TEMP MILLWRIGHT." That designation does

        Thus, the terms of plaintiff's employment agreement with Mid-Oregon are not dispositive. Those terms would matter only if Mid-Oregon had sought to take advantage of the "temporary basis" exception in ORS 656.850 (1993) to avoid the requirement to provide workers' compensation insurance for plaintiff. Therefore, any factual dispute on that point was not material and did not preclude summary judgment. Accordingly, we hold that defendant is entitled to the immunity provided by ORS 656.018(4) (1993).

        Affirmed.

---

not aid plaintiff, however, because it did not satisfy the director's rule. Before plaintiff began work at MME, Mid-Oregon had described all the workers only as "MILLWRIGHT" in its bills to MME. Beginning with the first bill that included plaintiff's services, Mid-Oregon described all the workers as "TEMP MILL-WRIGHT," including those who had worked for MME under the prior label. Thus, the payroll billings made no distinction between the temporary and leased workers at MME, contrary to what the rule requires. Therefore, under the rule, all of the workers, including plaintiff, must be deemed to be leased workers.