Argued and submitted April 13, reversed and remanded September 21, 2011,
petition for review allowed May 3, 2012 (352 Or 25)

HOMESTYLE DIRECT, LLC,
*Petitioner,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent.*

Oregon Department of Human Services
20091957; A145136

263 P3d 1118

Samuel E. Sears argued the cause and filed the briefs for petitioner.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Petitioner is an Idaho company that was authorized by the Department of Human Services (DHS) to prepare and package meals for distribution to eligible elderly persons and disabled Medicaid participants. In a contested case hearing, DHS found that petitioner had violated an agreement to abide by certain nutritional and delivery standards, and, as a result, the agency revoked petitioner's status as an approved provider. On judicial review, petitioner argues that the standards at issue were invalid because they had not been promulgated according to the Administrative Procedures Act (APA), ORS 183.310 to 183.690. DHS responds that, under *Coats v. ODOT*, 334 Or 587, 54 P3d 610 (2002), it has the authority to enforce the terms of an agreement even if those terms incorporate invalid rules. We agree with petitioner that DHS unlawfully adopted the standards, and they are therefore invalid. We also hold that *Coats* does not permit the agency to enforce these invalid rules, even though petitioner agreed to abide by them.

To be authorized (and receive payment) as a home-delivery meal provider under a cooperative state and federal program, a company or agency must obtain a Medicaid provider number by signing an agreement with DHS to abide by its nutritional and other requirements. In 2005, petitioner obtained a Medicaid provider number from DHS and began furnishing meals to Medicaid recipients in Oregon by shipping the meals to them once or twice per month via United Parcel Service.

In November 2008, DHS sent a letter to all home-delivery meal providers, including petitioner, notifying them that DHS had published new "Nutrition Program Standards" and enclosing a copy of those standards. Among other requirements, the standards include providing five hot meals per week, providing nutrition education to participants, performing routine food-temperature checks, and training delivery personnel to check on participants' welfare at the time of delivery. DHS's letter informed providers that they were required to submit the new provider enrollment application that was included with the letter if they wished to renew their provider number and remain eligible for payment. The

letter informed providers that, "[b]y signing the provider enrollment form, providers agree to meet the Division of Medical Assistance Program general provider standards as well as the attached Nutrition Program Standards." At the end of November 2008, petitioner signed and returned the provider agreement despite the fact that, contrary to the new standards, it was not delivering the minimum number of hot meals, ensuring that recipients' meals contained the required minimum nutritional allowance, meeting the delivery driver requirements, or adequately monitoring food temperature.

In April 2009, DHS determined that petitioner had breached the provider agreement by failing to meet the required nutrition program standards and issued a notice to petitioner revoking its Medicaid provider number pursuant to OAR 407-120-0360(4), which provides, in part:

> "When the Department determines the provider fails to meet one or more of the Department's requirements governing participation in its programs the Department may impose discretionary sanctions. Conditions that may result in a discretionary sanction include, but are not limited to when a provider has:
>
> "* * * * *
>
> "(v)  Breached the terms of the provider contract or agreement[.]"

Petitioner requested a hearing before an administrative law judge (ALJ). At the hearing, petitioner argued that the nutrition program standards were unenforceable because they constituted invalidly promulgated rules and that, for that reason, petitioner had no enforceable obligation to adhere to the provider agreement. The ALJ ruled in favor of the agency on the ground that, regardless of the rules' validity or invalidity, the agreement was an enforceable contract and petitioner had breached its terms:

> "I find no authority that prevents an agency from including terms in a contract that can be construed as unpromulgated rules. While the new * * * standards do meet the statutory definition of rules, because the Department is attempting to enforce the standards as contractual terms in this matter I do not address their validity as rules under the APA."

DHS issued a final order adopting the ALJ's proposed order and revoking petitioner's provider number. Petitioner now seeks review of that final order.

DHS acknowledged at oral argument that the guidelines should have been promulgated according to the APA. We agree. DHS is subject to the rulemaking provisions of the APA. ORS 409.050. The APA defines a rule as

> "any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency."

ORS 183.310(9). "An administrative action may be a rule subject to judicial review, even if the agency does not call it a rule." *McCleery v. Board of Chiropractic Examiners*, 132 Or App 14, 16, 887 P2d 390 (1994). The nutritional standards are generally applicable requirements for obtaining a provider number, and they describe when DHS can issue such a number. Thus, DHS should not have circumvented the unambiguous requirement to promulgate rules according to the APA.

That conclusion necessarily means that, if DHS had simply revoked petitioner's provider number for violating the rules, petitioner would have prevailed in a challenge to that action. ORS 183.400; *Minor v. AFSD*, 105 Or App 178, 804 P2d 1170 (1991) (validity of rule must be challenged in contested case where possible). DHS, however, argues that, under the Supreme Court's decision in *Coats*, 334 Or 587, the validity of the rule is not at issue in this case; the only issue here is whether petitioner violated one of the terms of its voluntary agreement with DHS. In other words, DHS argues that, under *Coats*, an agency can avoid the statutorily mandated rulemaking procedures and then enforce the resulting, otherwise unenforceable, rule by the simple expedient of incorporating it into a contract or agreement.

In *Coats*, the plaintiff had a contract with the Oregon Department of Transportation (ODOT). *Id.* at 589. One term of the contract required the plaintiff to abide by a Bureau of Labor and Industry (BOLI) rule regarding prevailing wages. *Id.* at 589-90. The plaintiff failed to do so. *Id.* at

591. BOLI then threatened to declare the plaintiff ineligible to bid on future public works projects, and ODOT withheld payments on the contract. *Id.* at 591-92. The plaintiff initiated a breach of contract action in circuit court against ODOT, arguing, among other things, that ODOT could not withhold payment based on an alleged violation of BOLI's prevailing wage rule because that rule was invalid. *Id.*

The Supreme Court ultimately held that the circuit court did not have jurisdiction to adjudicate the rule challenge. *Id.* at 597. In the process of reaching that decision, the court rejected the plaintiff's argument that the circuit court had jurisdiction under the rule of *Hay v. Dept. of Transportation,* 301 Or 129, 138, 719 P2d 860 (1986): A circuit court has jurisdiction to consider a challenge to an administrative rule when the rule's validity is "at issue" in a "separate civil action" properly before the circuit court. The court explained:

> "Plaintiff argued in circuit court that the *Hay* exception applies here because he has placed the validity of BOLI's rules 'at issue' in a separate civil action for breach of contract. In other words, plaintiff claimed that judicial review of the validity of BOLI's rules is necessary to resolve whether plaintiff or ODOT breached the parties' contract. Plaintiff, however, is mistaken. He seeks to challenge the validity of state agency rules that, earlier, he had agreed to as contract terms. Even if plaintiff could not be forced to comply with those rules by operation of law, he nonetheless could bind himself to do so by contract, as he did here. *See Vulcan Arbor Hill Corp. v. Reich,* 81 F3d 1110, 1115 (DC Cir 1996) (federal prevailing wage statute enforceable against party, regardless of whether applicable by force of law, when party had agreed to application of statute by contract); *Woodside Village v. Sec. of U.S. Dep't of Labor,* 611 F2d 312, 315 (9th Cir 1980) (same). Instead, the only relevant question is whether BOLI's rules are applicable to plaintiff as contract terms. The validity of BOLI's rules, therefore, is not relevant to, or 'at issue' in, plaintiff's breach of contract action."

*Coats,* 334 Or at 597 (emphasis omitted). DHS contends that, just as the validity of the BOLI rule was not "at issue" in *Coats,* so too the DHS rules are not "at issue" here: The only

issue here is whether petitioner violated its agreement with DHS.

Despite some broad language that would support DHS's position, we disagree for several reasons. First, we conclude that there is a difference between a rule that may be invalid because it results from an agency's misinterpretation of a statute, the situation in *Coats*, and a rule that is invalid because it was never promulgated—in effect, a nonrule. And we believe that the difference is in kind, not in degree. In *Coats*, the most that could be said against BOLI was that its statutory interpretation of the prevailing wage law was potentially erroneous. Here, the agency failed completely to comply with one of the basic precepts of administrative law: A rule that can be brought to bear so as to impose serious disabilities on citizens must, at the least, be subjected to some level of public scrutiny before it goes into effect.[1] Second, and relatedly, the allegedly invalid contract term that the agency in *Coats* incorporated into its contract with the plaintiff was a provision obligating the contractor to pay wages in excess of the minimum established by the prevailing wage law. *Id.* at 590-91. In agreeing to obey that rule, the contractor agreed only to continue doing what it was already doing, only to a greater degree. Here, the standards that DHS incorporated into its agreement with petitioner obligated petitioner to cease doing what it had lawfully done in the past and to begin doing something entirely different. In other words, the invalid new standards in this case were significantly more burdensome than the allegedly invalid rule in *Coats*. Third, the focus in a breach of contract action is on whether the parties to the contract have honored the mutual obligations that they have undertaken. In a rule challenge that is part of the defense to an agency action to enforce a rule, on the other hand, the focus is on whether the agency's rule is within its authority, and the fact that the rule has been rebranded as a contract term does not alter that basic fact.

Fourth, and most significantly, *Coats* is at bottom based on the assertion that "[t]he validity of BOLI's rules

---

[1] We do not mean to imply that, in bypassing rulemaking procedures, DHS intended to avoid public comment or scrutiny.

\* \* \* is not relevant to, or 'at issue' in, plaintiff's breach of contract action." *Id.* at 597. In an action in circuit court, brought by a plaintiff alleging that the defendant agency has breached a contract by threatening to withhold payment due to the plaintiff's alleged violation of another agency's invalid rule, the connection between the validity of the rules and the question whether the defendant has breached a contract is attenuated. In an agency action to enforce a contract term *that is itself* an invalid rule, the connection is direct; indeed, the invalidity of the rule and the legitimacy of the contract enforcement are, in reality, the same question. Put another way, the validity of the DHS rule in this case is not only "at issue" in DHS's enforcement action, it *is the issue*. As the APA recognizes, the validity of rules is frequently an issue, if not *the* issue, in contested cases. Thus, ORS 183.400(1) acknowledges that, if the validity of a rule is or could be at issue in a contested case, a party to that contested case may obtain an adjudication of the rule's validity *in that case* only or on judicial review of that case; the party may not independently and directly seek judicial review in the Court of Appeals. *Minor*, 105 Or App at 181-82. The legislature, then, expressly links the question of rule validity with the question of rule enforcement; the former is at issue in the latter, and an agency cannot disconnect the two by the expedient of placing the invalid rule in a contract term and then enacting another rule enabling enforcement of contracts. In this case, that means that DHS cannot enforce its own unpromulgated standards by putting them in the provider agreement and then enforcing the rule that allows sanctions for noncompliance with that agreement. In substance, if not in form, that is an attempt to enforce an invalid rule.

Reversed and remanded.